William U. PAYNE; Flora A. Payne and Lowell E. Payne, Plaintiffs,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY; and Maryland Casualty Co., Defendants.

No. 84–1443–CIV–EPS.

United States District Court, S.D. Florida, Miami Division.

Nov. 21, 1985.

John Wilcox, Miami, Fla., for plaintiffs.

William Flynn, Miami, Fla., for USF & G.

James Blecke, Miami, Fla., for Maryland.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT USF & G

SPELLMAN, District Judge.

This CAUSE comes before the Court on the Plaintiffs' and Defendant's Motions for Summary Judgment on the question of whether the insurer is obligated to defend the Plaintiffs against the actions filed by the United States Environmental Protection Agency (EPA) and the Florida Department of Environmental Regulation (DER). The parties are not here seeking a determination of the insurer's obligations to indemnify the Plaintiffs for any potential liability in the main case and acknowledge that questions of fact remain to be resolved as to coverage for any damages.

The Plaintiffs herein obtained a policy of Comprehensive General Liability Insurance from the Defendant, United States Fidelity and Guaranty Company (USF & G), covering their interest in a parcel of property in Medley, Florida, for the term beginning May 24, 1974 and ending May 24, 1977. During this period, Pepper's Steel and Alloy Company rented adjacent property to operate a metal recovery business. Pepper's was engaged in recycling metals from transformers and wire purchased from Florida Power and Light. In 1982 an analysis of the soil in this vicinity and of the water revealed an intense anomaly of oil layers with substantial concentrations of polychlorinated biphenyls and other pollutants. In July 1983, the EPA and DER filed separate and independent suits against the Plaintiffs identifying them as potentially responsible parties. In essence, the Complaints alleged that the Plaintiffs herein had not undertaken an effort to control or contain the spread of the PCBs at the site and refused to grant the EPA and its contractors access to the site to undertake remedial action. The suits initiated enforcement action and sought clean-up and other relief.

In September 1983, the Plaintiffs notified USF & G of the suits and demanded a defense pursuant to the terms of their policy. When the insurer denied coverage, the Plaintiffs filed a declaratory action seeking an interpretation of their rights and the insurer's duties under the policy. At the initial status conference, the parties agreed

that as to the duty to defend, there appeared to be no triable issues of fact, and the Court invited the parties to file Motions for Summary Judgment on this issue. After having reviewed and considered the Motions for Summary Judgment, the Memoranda of law, the pleadings, and the affidavits, and after having heard and considered oral argument of counsel, this Court GRANTS the Plaintiffs' Motion for Partial Summary Judgment against the Defendant, USF & G. Because this is a case of first impression in Florida, the issues herein warrant extended analysis.

## II.

 The construction and effect of a written contract of insurance is a matter of law to be determined by the court. *St. Paul Mercury Insurance Co. v. Huitt*, 336 F.2d 37 (6th Cir.1964). Since the jurisdiction of this Court is based on diversity and since the insurance contract was issued in Florida, this Court must look to Florida law in its interpretation of the policy. *Id.* USF & G's duty to defend the Plaintiffs herein rests entirely upon the meaning of the provisions of the policy and its legal effect. Such a determination is most appropriate for summary judgment. *See Buckner v. Physicians Protective Trust Fund*, 376 So.2d 461 (Fla.Dist.Ct.App.1979).

The pivotal sections of the insurance policy are as follows:

*Coverage*

The Company will pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of ... bodily injury ... property damage ... to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

*Occurrence*

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

*Property Damage*

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period.

*Pollution Exclusion*

This insurance does not apply ... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## III.

The Defendant contends that the allegations set forth in the Complaints filed by the EPA and the DER fail to allege facts requiring USF & G to provide a defense for the Plaintiffs. The policy only covers pollution if such "discharge, dispersal, release or escape is sudden and accidental." The Defendant then argues that the Plaintiffs herein knew that Pepper's was draining the oil and consented to this activity. From there, USF & G concludes that such knowledge and consent on the part of the Plaintiffs amount to "intent," and that intentionally allowing the release of hazardous substances precludes classifying this discharge as "sudden and accidental" within the embrace of the policy.

To bolster this line of reasoning, the Defendant cites *American States Insurance Co. v. Maryland Casualty Co.*, 587 F.Supp. 1549 (S.D.Mich.1984). *American States* was a declaratory judgment action brought by an insurance company against its insured and other insurance carriers. The precise issue before the court was which, if any, of the carriers owed the insured, National Drum, a duty to defend it in four underlying lawsuits arising out of the dumping of toxic waste materials. The insurance policy at issue contained an exclusion clause identical to the one in the instant case.

The Michigan court in *American States* found that none of the insurers had a duty to defend the insured. This decision rested upon the court's determination that the release of the toxic materials was "continuous" and not "sudden or accidental." The court in so concluding emphasized the fact that in the suits filed against National Drum, it was alleged that the Defendant "entered into agreements to unlawfully dispose of the toxic materials" and was "the originator or producer" of the toxic wastes. *Id* at 1551. It is crucial to note that in the suits filed against the Plaintiffs herein, it is nowhere alleged that the insured have generated or produced the hazardous substances. Nowhere is it alleged that the Plaintiffs disposed of toxic waste as a natural and usual part of its business. The Plaintiffs herein own a parcel of property contiguous to commercial real property on which Pepper's operates its business. It has not been suggested that the Plaintiffs have any active involvement in the production of PCBs or in the dumping of such pollutants into the environment.

■ In *American States*, the court relied in part on policy considerations delineated by the court in *Niagara County v. Utica Mutual Insurance Co.*, 80 A.D.2d 415, 439 N.Y.S.2d 538, (1981). *Niagara County* was a suit brought by the insured, a county, against an insurance company for a declaratory judgment with respect to the duty of the insurer to defend the county in the "Love Canal" litigation. The court found that the county was entitled to a defense by the insurer notwithstanding the provision in the policy excluding coverage against liability for pollution or contamination unless such was sudden and accidental. The court stressed that the objective of the pollution exclusion clause was to buttress environmental protection standards. The New York legislature, in mandating such a clause, feared that commercial or industrial enterprises would circumvent adherence to environmental standards by simply purchasing insurance to insulate themselves from any liability arising from their pollution. The court concluded that the clause, identical to the one before this Court, was intended to apply to only actual polluters. Undeniably this Court's interpretation of the policy as providing coverage to the Plaintiffs herein, property owners who are not the originators of the toxic substance, who are not commercial or industrial enterprises, will not frustrate the objectives behind the inclusion of such "pollution clauses" in insurance contracts.

### IV.

One of the earliest cases to define the term "sudden and accidental" in the pollution exclusion clause was *Lansco, Inc. v. Department of Environmental Protection*, 138 N.J.Super. 275, 350 A.2d 520 (1975). In *Lansco*, unknown persons opened the valves on two storage tanks at the insured's business. The DEP ordered the insured to clean-up the spill. The insured then filed a declaratory judgment action to establish coverage under a comprehensive general liability insurance policy for costs incurred in the cleaning up. The court found the exclusion clause inapplicable in such a case. The court found that "the words used by the insurer must be interpreted in accordance with the plain, ordinary and commonly understood meaning of the language employed." *Id.* 350 A.2d at 523. Further, the court found that whether an "occurrence is accidental must be viewed from the standpoint of the insured." *Id* at 524. Since the spill was neither expected nor intended by the in-

sured, it followed that it was "sudden and accidental." *Id.*

*Buckeye Union Insurance Co. Inc. v. Liberty Solvents & Chemicals Co.,* 17 Ohio App.3d 127, 477 N.E.2d 1227 (1984) is another case in which the court interpreted the pollution exclusion clause and compelled the insurer to assume the defense of its insured even though the policy holder was an industrial entity. In *Buckeye Union,* the Complaint alleged that generators of hazardous waste contracted with Chem-Dyne Corporation for the disposal of hazardous waste, that the waste was discharged when Chem-Dyne ruptured the containers, and that this spill resulted in the pollution of the environment in and around the disposal site. The generator of hazardous waste requested that its insurer defend the actions under the terms of the policy. The court of appeals reversed the trial court and found that the insurer was required to defend the insured because there were no allegations in the complaint compelling a conclusion that the insured intended or expected releases of such chemical substances into the environment.

The facts of the instant case do fall within the ambit of the decisions in other jurisdictions which have construed the pollution exclusion clause. The Complaints filed against the Plaintiffs herein by the EPA and DER are devoid of allegations compelling the conclusion that the Plaintiffs herein intended or expected the discharge of PCBs into the environment by a commercial enterprise operating on a parcel of adjacent land.

### V.

The Defendant has accurately cited *State Farm Fire and Casualty Co. v. Edgecumbe,* 471 So.2d 209 (Fla.Dist.Ct.App. 1985) for the proposition that whether an insurance company owes a duty to provide an insured with a defense to proceedings initiated against him must be determined from the allegations of the Complaint. In addition, it has been firmly embedded in the jurisprudence of this State that contracts of insurance should be construed

most favorably to the insured. *Gulf Life Insurance Co. v. Nash,* 97 So.2d 4 (Fla. 1957). In other jurisdictions, courts have particularly applied such canons of construction to the pollution exclusion:

> Where the terms of an insurance policy are ambiguous or are subject to more than one reasonable construction, the policy must be construed most favorably to the insured and strictly against the insurer.... This is particularly so as to ambiguities found in an exclusionary clause. *Niagara County v. Utica Mutual Insurance Co.* [80 A.D.2d 415], 439 N.Y.S.2d 538, 541 (N.Y.App.Div.1981), citations omitted. *See also, Buckeye Union Insurance Co. Inc. v. Liberty Solvents & Chemicals Co.* [17 Ohio App.3d 127], 477 N.E.2d 1227 (Ohio Ct.App.1984).

In light of these principles, this Court is persuaded that the pleadings state facts which bring the insured within the coverage of the policy.

### VI.

In conclusion, the construction and effect of a written contract of insurance is a matter of law within the province of the court. Because the pollution did not result from the regular course of the insured's business and because there are no allegations in the EPA or DER Complaints compelling the determination that the insured intended or expected the release of PCBs into the environment or the damages that such releases could cause, this Court GRANTS the Plaintiffs' Motion for Partial Summary Judgment against USF & G. This Court finds as a matter of law that the insurer may not avoid its obligations to defend the Plaintiffs against the actions filed by the EPA and the DER.