999 F.2d 489
 37 ERC 1554
 UNITED STATES FIDELITY & GUARANTY COMPANY, St. Paul Mercury
Insurance Company, Hartford Casualty Company, and
Home Indemnity Company, Plaintiffs-Appellees,
v.
MORRISON GRAIN COMPANY, INC., Defendant-Appellant,
and
Morrison Coal Company, Inc., Defendant.
 No. 90-3123.
 United States Court of Appeals,
Tenth Circuit.
 July 19, 1993.
 
 1
 J. Stan Stexton of Hampton, Royce, Engleman & Nelson, Salina, KS, for defendants-appellants.
 
 
 2
 Mark C. Beam-Ward of Hill, Beam-Ward & Alberg, Overland Park, KS, Jeffrey L. Fillerup of Adams, Duque & Hazeltine, San Francisco, CA, Arthur S. Chalmers of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS (Thomas R. Hill of Hill, Beam-Ward & Alberg, Overland Park, KS, Mitchell L. Lathrop and Robin Craig-Olson of Adams, Duque & Hazeltine, San Francisco, CA, Stephen M. Kerwick of Foulston, Siefkin, Powers & Eberhardt, Wichita, KS, on the brief), for plaintiffs-appellees.
 
 
 3
 James T. Price of Spencer Fane Britt & Browne, Kansas City, MO (Terry W. Schackmann and Stephanie A. Matthews, with him on the brief), filed an amicus curiae brief for The American Petroleum Institute, The Chemical Mfrs. Ass'n, International Business Machines Corp., Olin Corp., The American Fiber Mfrs. Ass'n, The Kansas Power and Light Co., and The Cessna Aircraft Co.
 
 
 4
 William J. Brady of Berkowitz, Brady & Backus, Denver, CO, (David Troup of Weary, Davis, Henry, Struebing & Troup, Junction City, KS, with him on the brief), filed an amicus curiae brief for Colorado Trial Lawyers Ass'n and Kansas Trial Lawyers Ass'n.
 
 
 5
 Thomas W. Brunner of Wiley, Rein & Fielding, Washington, DC, (James M. Johnstone and Joseph L. Ruby of Wiley, Rein & Fielding, Washington, DC), filed an amicus curiae brief for Ins. Environmental Litigation Ass'n.
 
 
 6
 Victor C. Harwood, III of Harwood Lloyd, Hackensack, NJ (Edward Zampino and Bernadette M. Peslak of Harwood Lloyd, Hackensack, NJ; Robert M. Baldwin and Walter N. Houghtaling of Long & Jaudon, Denver, CO, with him on the brief), filed an amicus curiae brief for Aetna Cas. & Sur. Co.
 
 
 7
 Before BALDOCK, KELLY, Circuit Judges, and OWEN, Senior District Judge.*
 
 
 8
 OWEN, Senior District Judge.
 
 
 9
 This action was commenced in the District Court for the District of Kansas by plaintiffs-appellees United States Fidelity & Guaranty Company, St. Paul Mercury Insurance Company, Hartford Casualty Company, and Home Indemnity Company (collectively "Insurers"), seeking a declaratory judgment that they had no liability to defend or indemnify their insureds, defendants-appellants Morrison Grain Company, Inc. and Morrison Coal Company, Inc. (the "Insureds"), from and against legal liabilities to the United States Environmental Protection Agency ("U.S. EPA") and the Illinois Environmental Protection Agency ("Illinois EPA") under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601, et seq., ("CERCLA"), and the Illinois Environmental Protection Act, Illinois Revised Statutes, Ch. 111 1/2, p 1001 et seq. ("IEPA").
 
 
 10
 Preliminarily, Insurers move to dismiss Morrison Coal's appeal for failure to comply with Federal Rule of Appellate Procedure 3(c) which requires that a timely notice of appeal "specify the party or parties taking the appeal...." Fed.R.App.P. 3(c). Morrison Grain was designated in the notice of appeal as a party appealing, but Morrison Coal was not. Accordingly, we do not have appellate jurisdiction over Morrison Coal Company, Inc., and its appeal is dismissed. Torres v. Oakland Scavenger Co., 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988); LaBaron v. United States, 989 F.2d 425 (10th Cir.1993).
 
 
 11
 Turning to the merits of the appeal, the following undisputed facts are relevant:
 
 
 12
 In 1970 Agro Marketing Company ("Agro") was formed as a joint venture by Morrison Coal, a wholly owned subsidiary of Morrison Grain, and Cropland Chemical Company for the purpose of buying, selling, handling, and storing surplus agricultural chemicals, fertilizers, insecticides and related products.
 
 
 13
 In the mid-1970's it was discovered that chemicals at Agro's Latham, Illinois facility were stored in deteriorated leaking containers. Agro, accordingly, took steps to repackage these chemicals.
 
 
 14
 Around 1976, approximately thirty 55 gallon drums of pesticides were transported from Agro's Latham facility to Agro's Meredosia, Illinois facility where they were buried in excavated pits. Agro employees anticipated that these drums would rust and leak over time. In 1980 or 1981, the drums resurfaced, and those reburying the drums observed that they had in fact rusted.
 
 
 15
 In 1980, Agro's Latham facility, including stored fertilizer and pesticides, were sold to Norman R. Waters. That same year Agro went into bankruptcy.
 
 
 16
 In 1983, the U.S. EPA discovered large quantities of hazardous materials inadequately stored and even abandoned in disintegrating containers in unsecured and disintegrating buildings at Agro's Latham facility. Consequently, the U.S. EPA initiated a cleanup of the foregoing at the Latham facility pursuant to its authority under CERCLA[1]. In 1985 the U.S. EPA sought recovery of its CERCLA response costs in an action in federal court against Morrison Coal and Morrison grain, among others. In 1986, Morrison Grain and Morrison Coal entered into a partial consent degree pursuant to which it agreed to pay the United States $120,368.00 in settlement of the CERCLA response costs which had totaled $231,024.37.
 
 
 17
 In 1985, Morrison Grain and Morrison Coal notified the U.S. EPA that chemicals were buried at Meredosia. About the same time, a former Agro employee gave the Illinois EPA the same information. The Illinois EPA was given primary responsibility to investigate and cleanup the Meredosia facility. It ordered Morrison Grain and Morrison Coal to do their own cleanup, which they did at a cost of $214,000.00.
 
 
 18
 Morrison Grain and Morrison Coal thereafter filed claims with their Insurers for indemnification for their CERCLA and Illinois State environmental response costs under various general liability policies issued by Insurers. Each Insurer responded that each policy's pollution exclusion clause precluded such coverage. All of the policies involved contain the same or similar language as follows:
 
 INSURING AGREEMENT
 
 19
 The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
 
 Coverage B. property damage
 
 20
 to which this insurance applies, caused by an occurrence, and the Company shall have the rights and duty to defend any suit against the Insured seeking damages on account of such ... property damage....
 
 DEFINITIONS
 When used in this policy ...:
 
 21
 . . . . .
 
 
 22
 "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured;
 
 
 23
 . . . . .
 
 
 24
 "property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 EXCLUSIONS
 This insurance does not apply:
 
 25
 . . . . .
 
 
 26
 to ... property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
 
 
 27
 On the foregoing undisputed facts, Insurers' motion for summary judgment in the District Court was granted, the Court ruling that Morrison Grain and Morrison Coal were not entitled to indemnification under any of the various policies.[2] This appeal followed.
 
 
 28
 We apply a de novo standard of review to the district court's conclusions of law, and view the facts in a light most favorable to the non-movant, construing all reasonable inferences against the movant. Awbrey v. Pennzoil Co., 961 F.2d 928, 930 (10th Cir.1992).
 
 
 29
 While appellants raise a number of issues, we need reach but one which is dispositive. Each policy excludes reimbursement for damages arising out of the discharge of toxic chemicals or waste materials into or upon land. However, that exclusion does not apply if the discharge was "sudden and accidental", see supra, in which event there would be coverage under all the policies. The law of Kansas governs the insurance contracts at issue,[3] and it provides that if policy language is clear and unambiguous, the contract of insurance must be enforced according to the plain, common and popular meaning of its terms. American Media, Inc. v. Home Indem. Co., 232 Kan. 737, 740, 658 P.2d 1015 (1983). Morrison Grain and Morrison Coal contend in this action that "sudden and accidental" is ambiguous and means the unforeseen, the unintended, or the unexpected from the viewpoint of the insured. This proposition has support in a number of state and federal district court decisions, such as Pepper's Steel & Alloys Inc. v. United States Fidelity & Guar. Co., 668 F.Supp. 1541 (S.D.Fla.1987) and Payne v. United States Fidelity & Guar. Co., 625 F.Supp. 1189 (S.D.Fla.1985). Insurers, on the other hand, urge that "sudden and accidental" is unambiguous and has an objective temporal meaning. They cite an equally extensive line of cases in support of that position, including American Motorists Ins. Co. v. General Host Corp., 667 F.Supp. 1423 from the District of Kansas in 1987,[4] and federal appellate authority such as Northern Ins. Co. of New York v. Aardvark Assocs., Inc., 942 F.2d 189 (3d Cir.1991) and New York v. AMRO Realty Corp., 936 F.2d 1420 (2d Cir.1991). In granting the Insurers' motion for summary judgment, the District Court, in its lengthy, thorough opinion, agreed with the reasoning of the latter line of authorities, concluding that " 'sudden and accidental' should be [construed] objectively from the circumstances surrounding the actual release or discharge of the pollutants." 734 F.Supp. at 449 (emphasis added). According to the District Court:
 
 
 30
 The terms, "sudden and accidental," are unambiguous. As commonly used, the meaning of "sudden" combines both the elements of without notice or warning and quick or brief in time. C.L. Hauthaway & Sons [v. American Motorists Ins. Co.], 712 F.Supp. [265,] 268 [ (D.Mass.1989) ]; [United States Fidelity & Guar. Co. v.] Murray Ohio Mfg. Co., 693 F.Supp. [617,] 621 [ (M.D.Tenn.1988) ]. "Accidental" is typically defined from the subjective viewpoint of happening unexpectedly or by chance, while "sudden" has an objective definition. General Host Corp., 667 F.Supp. at 1428. Sudden connotes "a temporal aspect of immediacy, abruptness, swiftness, quickness, instantaneousness, and brevity." C.L. Hauthaway & Sons, 712 F.Supp. at 268.
 
 
 31
 To divorce "sudden" of its temporal component would eviscerate it of any independent meaning or force. "If 'sudden' refers only to the individual's subjective state of mind or capacity for forethought, it adds nothing to what the term 'accidental' has already delivered...." Id. Nor can this court accept the proposition that the phrase, "sudden and accidental," should be construed as an entity having but the one meaning of unexpected. Depriving "sudden" of its distinct temporal meaning and rendering it mere surplusage because of its use in conjunction with "accidental" directly contradicts Kansas law which requires a contract to be read as a whole and meaning to be given to all of its terms. If the discharge of pollutants is brief or short, unexpected or unanticipated, not gradual or sustained, and not intended or expected, then the "sudden and accidental" exception applies.
 
 
 32
 Id. at 446-47. We agree. The term "sudden and accidental" is unambiguous and has an objective temporal meaning. What the insured intends or foresees is of no consequence. Accordingly, we hold that under Kansas law, coverage is precluded here. The discharge here was not sudden and accidental, but a gradual dispersal or release of toxic chemicals or waste materials which ought to have been anticipated and avoided.[5]
 
 
 33
 Accordingly, the order of the District Court granting summary judgment to the Insurers is affirmed.
 
 
 
 *
 The Honorable Richard Owen, Senior United States District Court Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq
 
 
 [2]
 The opinion is reported below at 734 F.Supp. 437 (D.Kan.1990)
 
 
 [3]
 They were, the District Court concluded, negotiated and signed by the Morrison interests in Kansas
 
 
 [4]
 On appellate review by this Court, the legal principles applied by the District Court were affirmed, but the action was remanded for further proceedings regarding the factual issue of the insurer's duty to defend. American Motorists Inc. Co. v. General Host Corp., 946 F.2d 1482 (10th Cir.1991), vacated in part on reh'g, American Motorists Inc. Co. v. General Host Corp., 946 F.2d 1489 (10th Cir.1991)
 
 
 [5]
 We note that since the argument of this appeal, another panel of our court has issued its opinion reaching the identical conclusion, albeit under Utah law. See Anaconda Minerals Co. v. Stoller Chem. Co., 990 F.2d 1175 (1993)