FEDERATED MUTUAL INSURANCE COMPANY and Grain Dealers Mutual Insurance Company, Plaintiffs,

v.

BOTKIN GRAIN COMPANY, Defendant.

Civ. A. No. 91–1223–MLB.

United States District Court,
D. Kansas.

Feb. 8, 1994.

Timothy J. Finnerty, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS, for Federated Mut. Ins. Co.

Lee H. Woodard, Michael M. Walker, Woodard, Blaylock, Hernandez, Pilgreen & Roth, Timothy J. Finnerty, McDonald, Tinker, Skaer, Quinn & Herrington, Lynn D. Preheim, Morrison & Hecker, Wichita, KS, for Grain Dealers Mut. Ins. Co.

Charles E. Millsap, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Botkin Grain Co.

## MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court are the following:

1. Grain Dealers Mutual Insurance Company's motion for summary judgment and supporting memorandum (Docs. 37 and 38);

2. Federated Mutual Insurance Company's motion for summary judgment and supporting memorandum (Docs. 47 and 48);

3. Botkin Grain Company's motion for summary judgment and memoranda in opposition to Federated and Grain Dealers' motions (Docs. 51, 52 and 54);

4. Federated's memorandum in response to Botkin Grain's motion for summary judgment (Doc. 58);

5. Grain Dealers' memorandum in opposition to Botkin Grain's motion for summary judgment (Doc. 60);

6. Botkin Grain's reply (Doc. 62);

7. Botkin Grain's motion for certification of questions (Doc. 50);

8.  Grain Dealers' memorandum in opposition (Doc. 55);

9.  Federated's memorandum in opposition (Doc. 59); and

10. Botkin Grain's reply (Doc. 61).

### Uncontroverted Facts

From April 1978 until the fall of 1989, Botkin Grain operated a fuel depot at Argonia, Kansas. Prior to 1978, the depot was owned and operated by Mobil Oil Company. The fuel was stored in above-ground tanks and underground piping.

In mid-September 1989, an adjacent landowner notified Botkin Grain that he believed he had gasoline in his water well. The neighbor's belief was confirmed by tests and shortly thereafter, Botkin Grain closed the fuel depot. Botkin Grain is aware of no sudden or specific event during the time it owned the depot in which fuel spilled or leaked onto or into the ground and it has no idea or evidence how or when the contamination occurred.

There is some evidence that during the 20 years Mobil Oil operated the depot, fuel spilled on the ground when trucks were loading or unloading. Spills did not occur frequently and when they did, they were small. Inventories taken during the period when Mobil Oil owned the depot were always short, sometimes as much as 600 gallons over a 6 month period. Botkin Grain sometimes experienced discrepancies of 30–40 gallons per week between quantities received from suppliers and quantities sold. There is no evidence regarding the cause of these discrepancies and no evidence that they were the result of leakage from the tanks or lines.

The Kansas Department of Health and Environment (KDHE), which investigated the situation, has taken no position regarding how or when the spills occurred. The KDHE investigator who came to the site did not find any leaks in the tanks or lines. He did not place much credence in inventory discrepancies as evidence of leakage. The KDHE inspector did think it would be "possible" for several small spills over a multi-year period to saturate soil and groundwater.

The KDHE required Botkin Grain to submit a plan for remediation and treatment of the groundwater and Botkin Grain complied. Botkin Grain has spent substantial sums to clean up the site.

From May 1986 to April 1, 1991, Grain Dealers provided various comprehensive general liability (CGL) policies for Botkin Grain. From April 1987 through April 1, 1991, Grain Dealers also provided umbrella policies for Botkin Grain. Botkin Grain admits that all but one of the Grain Dealers' policies contain an exclusion which serves to exclude coverage during the applicable policy years. The only Grain Dealers' policy in controversy is number AMP12889 which provided coverage from April 1, 1987 to April 1, 1988.

Federated issued to Botkin Grain an initial CGL policy beginning in May 1978. Botkin Grain renewed this policy annually through 1986. In addition, Federated issued Botkin Grain umbrella policies for the period May 1978 through 1984.

Grain Dealers' policy number AMP12889 and all of the Federated liability and umbrella policies contain the following so-called pollution exclusion:

> This insurance does not apply to ... property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

In addition, the *Federated* policies issued during the period from May 1983 to May 1986 contained the following "clarification" of the aforesaid exclusion:

> It is agreed that the unintentional discharge, dispersal, release or escape of any liquid from a liquid storage tank or from any underground piping or connections leading to or from a liquid storage tank shall be deemed sudden and accidental with respect to [the aforesaid] exclusion.

Grain Dealers and Federated denied coverage and filed this action seeking declara-

tions of non-coverage. Botkin Grain has counterclaimed for a declaration of coverage.

### Standards for Summary Judgment

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).

### Discussion

Counsel have provided the court with thorough, well-written memoranda setting forth their respective positions. Much ink has been spilled on the "sudden and accidental" language of the policy exclusion. However, after the parties filed their memoranda, the Tenth Circuit decided *United States Fidelity & Guaranty Company v. Morrison Grain Co., Inc.*, 999 F.2d 489 (10th Cir.1993). The court construed a policy exclusion identical to the exclusion involved in this case and applying Kansas law,[1] held that the term "sudden and accidental is unambiguous and has an objective temporal meaning." It found that a discharge which is brief or short, unexpected or unanticipated, not gradual or sustained, and not intended or expected, *is* "sudden and accidental."

■ Botkin Grain has the initial burden to prove a loss (contamination causing property damage) covered by the policy. The court will assume, for purposes of the motions, that Botkin Grain has done so by evidence of the discovery of fuel in the adjoining landowner's water well.[2] The burden then shifts to the insurance companies to prove facts showing that loss arose out of a discharge, dispersal, release or escape of fuel which was *not* sudden and accidental. *United States Fidelity & Guaranty Company v. Morrison Grain Co.*, 734 F.Supp. 437, 443 (D.Kan.1990).

■ The court finds that the insurance companies have met this burden. It is undisputed that during the period of Botkin Grain's operation of the fuel depot, a "sudden and accidental" discharge, dispersal, release or escape of fuel *never* occurred. The only evidence linking the contamination to the fuel depot is the occasional surface spills which occurred prior to 1978. While it might be argued that each of these infrequent surface spills was "sudden and accidental," then so too is each drop or molecule of fuel which drips occasionally and unnoticed from a pinhole leak. Moreover, even if the pre–1978 spills are considered "sudden and accidental," there is a distinct causation problem in that the only "evidence" linking the spills to the present contamination, i.e. the property damage, is the KDHE inspector's opinion that it is "possible" for several small spills over a long period to cause the contamination. The court declines to accept this testimony as proof that the infrequent spills which occurred during Mobil Oil's operation of the depot caused the contamination first noticed in 1989.

Even if the problem of proof of causation is put aside and causation is assumed for purposes of the motions, the court believes that neither Judge Crow's nor the Tenth Circuit's opinions in *Morrison Grain* support a finding that a series of small discharges, dispersals, releases or escapes of fuel which occurred infrequently over a multi-year period prior to 1978 and which, over time, combined to cause a contamination problem discovered in 1989, constitute a "sudden and accidental" discharge. Thus, the exclusion is applicable and it is not necessary to discuss any other issues raised in connection with Grain Dealers' policy number AMP12889. There are no material facts in dispute with respect to that policy and Grain Dealers is entitled to a judgment of non-coverage as a matter of law.

■ The question is somewhat more complicated with respect to the Federated poli-

---

1. In similar cases decided under Utah law, the Tenth Circuit has held that the word "accidental" means unintended or unexpected and that the word "suddenly" means abrupt or instantaneous. *Anaconda Minerals Co. v. Stoller Chemical Co.*, 990 F.2d 1175, 1178 (10th Cir.1993); *Hartford Accident & Indemnity Company v. U.S.*

*Guaranty Company*, 962 F.2d 1484, 1487 (10th Cir.1992).

2. There seems to be some dispute regarding whether the contamination came from the fuel depot. This dispute is not material to the issues raised in the motions.

cies because of its "clarification" of the pollution exclusion. Botkin Grain first argues that the pollution *exclusion language* is "at least ambiguous." (Doc. 54, p. 36). It relies on a footnote in *Westchester Fire Insurance Co. v. City of Pittsburg, Kansas,* 768 F.Supp. 1463, 1470 (D.Kan.1991) where Judge O'Connor noted that the author of a recent comment published in the Washington University law review reports that a majority of courts find the standard pollution exclusion clause contained in commercial general liability policies to be ambiguous. It is not clear whether the pollution exclusion in the *Westchester Fire Insurance* was the same exclusion present in this case but, assuming it was, the facts in *Westchester* demonstrate that Judge O'Connor was faced with a different question, i.e. the meaning of the word "pollutants" in the exclusion. The dispute in *this* case involves the term "sudden and accidental" and that question has been settled by the Tenth Circuit.

More importantly, the issue presented by the Federated policies does not concern the language of the exclusion but rather the "clarification" to the *exception* to the exclusion. Federated points this out in its memorandum (Doc. 58, p. 39–41), noting that the clarification specifically speaks to the "unintentional discharge, dispersal, release or escape from any liquid from a liquid storage tank or from any underground piping or connections...." Federated argues that while any discharge may have been unintentional, there is no evidence that it resulted from leaks in tanks, piping or connections leading to or from tanks. In its reply (Doc. 62, p. 4–5), Botkin Grain declines to directly address Federated's argument. Instead, it argues that the only place it ever stored gasoline was in tanks and in underground piping and there is no evidence to suggest that it intended any discharge, dispersal, release or escape of gasoline.

The court finds that the Federated "clarification" is not ambiguous. It plainly states that the exception to the exclusion will exist when there is an unintentional discharge, dispersal, release or escape *from a storage tank or from any underground piping or connections leading to or from a storage tank.* While there is no evidence that the contamination at the fuel depot was intentional, there also is no evidence that it came from a discharge, etc., in storage tank or underground piping or connections. Thus, the "exception" to the exclusion does not apply.[3] For this reason, Federated likewise is entitled to a judgment of non-coverage.

Two final matters need to be mentioned. First, counsel have devoted many pages to the issue of whether Botkin Grain's expenditures to remediate the pollution are "damages" which the insurance companies are obligated to pay under the terms of their policies. Many courts, both federal and state, have considered this issue and there is lack of uniformity in the decisions. *See Hudson Insurance Company v. Double D Management Company, Inc.,* at pp. 1545–46 and the cases cited therein. In his opinion in *United States Fidelity & Guaranty v. Morrison Grain Company, supra* at p. 449, Judge Crow observed that although it was unnecessary to his decision, he was persuaded to follow the line of decisions holding that CERCLA response costs are not recoverable under CGL insurance. When the Tenth Circuit affirmed Judge Crow, it found that it was unnecessary to decide that issue. The parties agree that the question has not been decided either by the Kansas Supreme Court or the Kansas Court of Appeals.

Since this court does not have to decide whether Botkin Grain's remediation expenses are damages under the policies, it declines to express itself on the issue. It is particularly reluctant to do so since the record appears to be incomplete regarding the application of

---

**3.** The parties argue over whether Botkin Grain or Federated has the burden to prove the exception to the exclusion. Federated relies on *Hudson Insurance Company v. Double D Management Company,* 768 F.Supp. 1542, 1545 (M.D.Fla. 1991) and *Fireman's Fund Insurance Companies v. Ex–Cell–O Corporation,* 702 F.Supp. 1317, 1328 (E.D.Mich.1988) both of which place the burden to prove the *exception* to the exclusion on the *insured.* The court would be inclined to follow this rule but finds it unnecessary to reach the issue. Even if the burden is Federated's, it has met it. There simply is no evidence that the discharge came from leaks in the tanks, lines or connections.

CERCLA, if any, in this case. Although it is represented to the court that the KDHE's action is taken pursuant to the provisions of KSA 65–171v, the court also is aware of the provisions of 42 U.S.C. § 9604(d)(1) which provides for cooperative agreements between federal and state governments in connection with remediation of pollution. The existence of such an agreement could have a bearing on any decision regarding whether remediation expenditures are damages for purposes of the policies. *See* Note, *Towing the Line; Compliance With the National Contingency Plan for Private Party Costs Recovery Under CERCLA,* 32 Washburn Law Journal 190 (1993). In addition, the differences in language between the Federated CGL and umbrella policies raise questions which should not be resolved in "advisory" fashion.

Second, Botkin Grain has moved for an order certifying to the Kansas Supreme Court questions relating to the meaning of the term "sudden and accidental" and whether remediation costs and expenses are damages within the meaning of the insurance policies. For the reasons set forth in this memorandum and order, the motions are moot.

Accordingly, Federated Mutual Insurance Company's and Grain Dealers Mutual Insurance Company's motions for summary judgment (Doc. 47 and 37) are sustained. Botkin Grain Company's motion for summary judgment (Doc. 51) is denied.

It is further ordered that Botkin Grain's motion to certify (Doc. 50) also is denied.

IT IS SO ORDERED.