**LARSEN OIL COMPANY, an Oregon corporation, dba Red Hot Oil Company, Plaintiff,**

v.

**FEDERATED SERVICE INSURANCE COMPANY, a Minnesota corporation, Defendant.**

Civ. No. 93–1098–JO.

United States District Court, D. Oregon.

June 21, 1994.

Norman L. Lindstedt, Lindstedt Buono & Gordon, Portland, OR, for plaintiff.

Dianne K. Dailey, Ronald E. Bailey, Bullivant Houser Bailey Pendergrass & Hoffman, Portland, OR, Thomas H. Crouch, Charles E. Spevacek, Meagher & Geer, Minneapolis, MN, for defendant.

---

## OPINION AND ORDER

ROBERT E. JONES, Judge:

This disposition resolves cross-motions for summary judgment on whether defendant Federated Services Insurance Company (Federated) had a duty to defend plaintiff Larsen Oil Company (Larsen) in an underlying action. Larsen claims the duty to defend arose when Carson Oil Company and Columbia Heating & Cooling, Inc., defendants in the underlying action, filed third-party claims against Larsen for contribution and indemnification. *Bernice R. Lynch v. Carson Oil Company, Inc., Columbia Heating & Cooling, Inc., Defendants and Third–Party Plaintiffs v. Larsen Oil Company dba Red Hot Oil Company, Third–Party Defendant,* Case No. 9210–06834, Circuit Court for the State of Oregon, County of Multnomah (*Lynch v. Carson*).

Larsen initially claimed that Federated had both a duty to defend and a duty to indemnify the underlying action. However, subsequent to filing the complaint in the present action, the third-party claims against Larsen in the underlying action were dismissed on Larsen's motion for summary judgement. Larsen's claim regarding the duty to indemnify is therefore moot, and the remaining issues concern the duty to defend. In addition to seeking declaratory relief, Larsen claims defense costs of $20,648.35, and has indicated that it will seek attorney fees for the present action under Oregon Revised Statute 742.061.

Whether Federated had a duty to defend depends on whether the pollution exclusions in Larsen's two insurance policies with Federated apply to the underlying action. Because the pollution exclusions do apply, Federated did not have a duty to defend Larsen in the underlying action and Federated's motion for summary judgment is granted.

Larsen's complaint also sought punitive damages in the amount of $200,000 on the basis that defendant's denial was in bad faith and without just cause. Because Federated did not have a duty to defend, Larsen's claim for punitive damages is also dismissed.

## BACKGROUND AND FACTS

The following is based on the parties' stipulation of facts.

### 1. *Lynch v. Carson*

Bernice Lynch initiated an action in the Circuit Court for the State of Oregon, County of Multnomah, entitled *Bernice R. Lynch v. Carson Oil Company, Inc., Columbia Heating & Cooling, Inc.,* Case No. 9210–06834. The Second Amended Complaint in *Lynch v. Carson* made the following allegations:

(1) Lynch contracted with Columbia to dismantle her oil furnace and replace it with a gas furnace.

(2) In the course of performing the services, Columbia cut the fuel oil intake pipe to accommodate the removal of unused fuel from the tank.

(3) Columbia did not remove, cap, or otherwise incapacitate the intake pipe.

(4) Lynch notified Carson, and Carson acknowledged in writing that Lynch had had her oil furnace replaced with a gas furnace.

(5) On or about November 23, 1991 a Carson oil truck pumped 873 gallons of heating oil into the intake end of the fill pipe.

(6) Because the pipe had been severed, the oil did not reach the tank, but spilled into the basement and soil beneath Lynch's house.

(7) As a result of the spill, the house became uninhabitable due to the odor and presence of hydrocarbon particles throughout the living areas of the house.

Based on these allegations, Lynch made claims against Carson and Columbia based on strict liability, negligence, intentional tort, breach of contract, trespass, and intentional trespass. Lynch claimed damages resulting in part from both personal injury and property damage.

### 2. *The Third–Party Complaints*

Carson and Columbia filed third-party complaints against Larsen, the plaintiff in the current action. The third-party complaints alleged that Larsen had cut the oil fill pipe, and that Larsen was negligent in either

failing to remove the fill pipe, failing to cap the fill pipe, or failing to warn Lynch that the fill pipe had been severed. Based on these allegations, Carson and Columbia sought contribution and indemnification from Larsen. Larsen's motion for summary judgment in the third-party action was granted on the basis that there was no evidence that Larsen had cut the fill pipe. Order Regarding Third–Party Defendant Larsen Oil Company's Motions for Summary Judgment, Case No. 9210–06834, Oct. 4, 1993.

### 3. *The Insurance Policies*

For the period October 1, 1991 to October 1, 1992, Federated, defendant in the current action, issued to Larsen, plaintiff in the current action, two policies: a commercial general liability policy, and a commercial umbrella liability policy. Both policies were subject to similar pollution exclusions. The commercial general liability policy did not apply to:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time.[1]

The parties have stipulated that the heating oil spilled onto Bernice Lynch's property is a pollutant.

Federated's motion for summary judgment is based on the assertion that the duty to defend under the policies did not arise, because the damages sought in *Lynch v. Carson* would not have occurred but for the discharge, dispersal, release or escape of a pollutant, heating oil. Therefore, Federated argues that the liability from the underlying action falls squarely within the pollution exclusions of the two policies.

Plaintiff argues that it is entitled to summary judgment on the basis that the pollution exclusions only apply to discharges of pollution by the insured, and because plaintiff did not discharge any pollutants, the exclusions do not apply.

---

**1.** The commercial umbrella liability policy did not apply to:
> "Bodily injury" or "property damage" which would not have occurred in whole or in part

## STANDARD OF REVIEW

Summary judgment may be granted when there is no genuine dispute of any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party opposing summary judgment bears the burden of producing facts that create a genuine issue for trial, and if that party is unable to do so, then summary judgment is proper. *Lindahl v. Air France,* 930 F.2d 1434, 1436–37 (9th Cir.1991). Summary judgment is proper in the present case, because the parties have stipulated to material facts, and have filed cross-motions for summary judgment. The remaining issue, interpretation of the pollution exclusions, is a question of law suitable for disposition through summary judgment.

## DISCUSSION

■ The pollution exclusions at issue are referred to as "absolute" pollution exclusions. They are broader exclusions than "sudden and accidental" pollution exclusions, because they do not contain an exception for injury or damage arising out of a discharge of pollution that is sudden or accidental. By their terms, the pollution exclusions in Larsen's two policies exclude from coverage any " 'property damage' which would not have occurred in whole or in part but for the ... discharge ... of pollutants."

Larsen argues that the exclusions are intended to apply only in situations where the insured discharges pollution, not, as in the present case, where a third party causes the discharge of pollution. Larsen urges that the pollution exclusions be interpreted as if the words "by the insured" were inserted at the end of each exclusion.

Larsen attempts to show that the terms of the pollution exclusions are ambiguous by comparing the commercial liability pollution exclusion with another exclusion (exclusion f(2)) from the same policy. The pollution exclusion states that the insurance does not apply to:

> but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants from other than an 'automobile' at any time....

property damage which would not have occurred in whole or in part but for ... discharge ... of pollutants at any time.

Exclusion f(2) states that the insurance does not apply to:

> any loss ... arising out of any request, demand or order that any insured or others ... clean up ... or in any way respond to, or assess the effects of pollutants.

Exclusion f(2) incorporates the phrase "by the insured or others," while the pollution exclusion does not. Larsen contends that the absence of this phrase from the pollution exclusion means that it does not apply to discharges "by the insured and others," but only to discharges by the insured[2].

Federated asserts that the pollution exclusions do not explicitly reference discharges of pollution "by the insured" nor "by the insured and others," because the exclusions were meant to apply without limitation, including situations where no active discharger exists, such as when property damage results from a leaking underground storage tank. Federated contends that the terms of the exclusions are not ambiguous and that it should be interpreted according to its express terms, to exclude any property damage resulting from a discharge of pollution, regardless of the cause. Federated argues that the interpretation asserted by Larsen places a limitation on the exclusion that was not intended under the policy.

Under Oregon law, which controls in this diversity action, an insurer's duty to defend is determined by the allegations of the complaint in the underlying action. *Allstate Ins. Co. v. Belezos,* 744 F.Supp. 992, 995 (D.Or. 1990), *aff'd,* 951 F.2d 358 (9th Cir.1991); *Delta Sand & Gravel v. General Ins. Co. of America,* 111 Or.App. 347, 350, 826 P.2d 82, *rev. denied,* 314 Or. 175, 836 P.2d 1344 (1992). In this case, the allegations that determine whether there was a duty to defend are those in Carson's and Columbia's third-party complaints. Also, because Carson and Columbia sought contribution and indemnity, the allegations in Lynch's complaint are also relevant to determining whether there was a duty to defend.

Lynch's complaint alleged, "[b]ecause the pipe was severed beneath the house, the oil spilled without reaching the tank. The oil seeped into the soil under a crawl space and through the concrete floor of the finished basement into the earth below." Second Amended Complaint for Damages, ¶ 8, *Lynch v. Carson.* Lynch's complaint also claims property damage resulting from the discharge of oil into her basement. *Id.* ¶ 15. Lynch's complaint, therefore, seeks compensation for property damage that would not have occurred but for the discharge a pollutant, heating oil. This is precisely the type of liability excluded by the pollution exclusions found in Larsen's two policies with Federated.

The exclusions at issue are not ambiguous. Similar pollution exclusions have been interpreted to unambiguously preclude indemnification for property damage arising out of pollution. *See, e.g., Great Northern Ins. Co. v. Benjamin Franklin Federal Savings and Loan Ass'n,* 793 F.Supp. 259 (D.Or.1990), *aff'd,* 953 F.2d 1387 (table) (9th Cir.1992); *Hydro Systems v. Continental Ins. Co.,* 717 F.Supp. 700 (C.D.Cal.1989), *aff'd,* 929 F.2d 472 (9th Cir.1991). Where the terms of the policy are unambiguous, the contract should be enforced according to its terms. *Garrett v. State Farm Mutual Ins. Co.,* 112 Or.App. 539, 829 P.2d 713, *rev. denied,* 313 Or. 627, 835 P.2d 916 (1992). Courts will not apply a strained meaning to unambiguous language to create an ambiguity where none exists. *Mortgage Bancorporation v. New Hampshire Ins. Co.,* 67 Or.App. 261, 677 P.2d 726, *rev. denied,* 297 Or. 339, 683 P.2d 1370 (1984). Furthermore, courts cannot change the parties' contract and create coverage

---

2. Larsen also argues that, because Federated offers no insurance to cover discharges by someone other than the insured on property not owned by the insured, such coverage must be available under the policies in question. While evidence of other insurance available may be considered in determining the nature of the insurance actually purchased (*Fisher v. California Insurance Co.,* 236 Or. 376, 388 P.2d 441 (1964)), Larsen's argument fails to consider that the duty to defend is determined by the allegations of the complaint, not by facts subsequently determined. Because the third-party complaints alleged that the insured caused a discharge of pollutants, it is irrelevant whether Federated offers insurance for discharges of pollution by third parties.

where coverage is plainly excluded. *Allstate Ins. Co. v. State Farm Mutual Auto. Ins. Co.,* 67 Or.App. 623, 679 P.2d 879 (1984).

Cases cited by Larsen in support of the assertion that pollution exclusions do not apply when the insured is not the discharger have not been widely followed. *Niagara County v. Utica Mutual Ins.,* 80 A.D.2d 415, 439 N.Y.S.2d 538 (1981), which held that a sudden and unexpected pollution exclusion did not apply to discharges of pollutants by persons or entities other than the insured, has not been followed within its jurisdiction. *See Powers Chemco, Inc. v. Federal Ins. Co.,* 144 A.D.2d 445, 533 N.Y.S.2d 1010 (1988). In declining to follow *Niagara County,* the court stated, "[t]he clear and unambiguous language of the pollution exclusion makes no exception for pollution caused by someone other than the insured...." *Powers Chemco,* 144 A.D.2d at 446–47, 533 N.Y.S.2d 1010. Likewise, *Covington Township v. Pacific Employers Ins. Co.,* 639 F.Supp. 793 (M.D.Pa.1986) which held that a pollution exclusion did not apply when the discharge was caused by someone other than the insured, has also not been followed. *See Federal Ins. Co. v. Susquehanna Broadcasting Co.,* 727 F.Supp. 169, 177 (M.D.Pa.1989), *aff'd* 928 F.2d 1131 (3rd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991).

Larsen also relies on *Payne v. United States Fidelity & Guaranty Co.,* 625 F.Supp. 1189 (S.D.Fla.1985), which held that a sudden and unexpected pollution exclusion did not apply when the insured did not expect nor intend to discharge pollution. The reasoning in *Payne,* however, has also not been followed. *See Industrial Indemnity Ins. Co. v. Crown Auto Dealerships, Inc.,* 731 F.Supp. 1517, 1519–20 (M.D.Fla.1990).

That the exclusion applies to any property damage caused by the discharge of pollution, regardless of the cause, is consistent with case law interpreting similar pollution exclusions. *See, e.g., Park–Ohio Industries, Inc. v. The Home Indemnity Co.,* 975 F.2d 1215, 1219 (6th Cir.1992) ("The pollution exclusion places no limitation on how the discharge is to be made or by whom.") *Transamerica Ins. Co. v. Sunnes* also supports Federated's interpretation of the pollution exclusion. 77 Or.App. 136, 711 P.2d 212 (1985), *rev. denied,* 301 Or. 76, 717 P.2d 631 (1986). Although *Sunnes* did not address a situation where the discharge was made by a third-party as in the present case, *Sunnes* supports defendant's interpretation in that it rejected the notion that pollution exclusions only apply if the insured is an "active polluter." *Id.* at 141, 711 P.2d 212. It is the type of damage, not the cause of damage, that controls whether the exclusion applies. *See Montee v. State Farm Fire and Casualty Co.,* 99 Or.App. 401, 405, 782 P.2d 435 (1989), *rev. denied,* 309 Or. 521, 789 P.2d 1386 (1990) (interpreting exclusion for damage caused by settling—cause of losses has no bearing on whether losses consist of excluded kinds of damage).

It is unfortunate that Larsen had to expend litigation costs to defend third-party claims that appear to have been filed without merit. However, because the complaints in the underlying action alleged a claim for property damage that would not have occurred but for the discharge of pollution, the pollution exclusions clearly applied and the insurer had no duty to defend the insured. Defendant's motion for summary judgment (# 17) is granted. Plaintiff's motion for summary judgment (# 23) is denied.