**WEST AMERICAN INSURANCE COMPANY, a foreign corporation, Plaintiff,**

v.

**BAND & DESENBERG, a Florida partnership, Marilyn Parkhurst, Marlene Green, Sharon Reilly, and Susan Anderson, Defendants.**

No. 94–1646–Civ–T–24(C).

United States District Court,
M.D. Florida,
Tampa Division.

May 3, 1996.

---

W. Lane Neilson, Neilson & Associates, Tampa, FL, for West American Insurance Company.

Mark W. McFall, Abel, Band, Russell, Collier, Pitchford & Gordon, Chartered, Ft. Myers, FL, for Band & Desenberg.

David L. Goldman, Macy, Goldman & Farrow, P.A., Sarasota, FL, for Marilyn Parkhurst, Marlene Green, Sharon Reilly, Susan Anderson.

### *ORDER*

BUCKLEW, District Judge.

This cause comes before the Court for consideration of Plaintiff's Motion for Final Summary Judgment (Doc. No. 13, filed November 15, 1995) and Defendant Band & Desenberg's ("Band") Response and Cross–Motion for Summary Judgment (Doc. No. 17, filed December 13, 1995). Plaintiff filed a response to Band's cross-motion on January 4, 1996 (Doc. No. 21).

### Facts

Band owns a building located at 1970 Main Street in Sarasota, Florida. Plaintiff insures Band and this location under a business owners' policy. This policy is a standard policy written by Insurance Services Office, Inc. and contains an "absolute pollution exclusion." Specifically, the policy states that:

**B. EXCLUSIONS**

This insurance does not apply to:

. . . .

f.(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

In June 1992, American Pioneer Title moved its offices to the second floor of the building owned by Band. Defendants Parkhurst, Green, Reilly, and Anderson ("the employees") worked for American Pioneer Title in the building owned by Band. The employees claim that contaminants in the building's air caused them to suffer from a series of symptoms collectively referred to as sick building syndrome. The employees allege that their injuries result from a poorly designed air conditioning system that has allowed air-borne contaminants from the attic space into the building's office space.

In April 1994, the attorney for the employees made a demand on Plaintiff to settle the claims of the employees arising out of the contaminated air in Band's building. Plaintiff refused to settle with the employees, citing the pollution exclusion in Band's policy. Band and the employees disputed the applicability of the pollution exclusion to the facts of their case. As a result of this dispute, Plaintiff filed a declaratory judgment action against Band and the employees, seeking a determination by this Court that there is no coverage for these injuries and no duty to defend Band in any suit arising out of these injuries. The parties subsequently filed cross-motions for summary judgment, each claiming that the policy should be interpreted in their favor.

## Discussion

A party is entitled to summary judgment when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is particularly appropriate when the parties have stipulated to the material facts and filed cross-motions for summary judgment. *Lar-sen Oil Co. v. Federated Serv. Ins. Co.,* 859 F.Supp. 434, 436 (D.Or.1994), *aff'd,* 70 F.3d 1279 (9th Cir.1995). In this case, the parties have filed cross-motions for summary judgment and the only remaining issue is the interpretation of the pollution exclusion. Therefore, disposition through summary judgment is appropriate.

When a lawsuit is filed in federal court based on diversity of jurisdiction and there are no federal constitutional or statutory issues to be decided, substantive legal issues are decided according to state law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Consolidated Am. Ins. Co. v. Hinton,* 845 F.Supp. 1515, 1518 (M.D.Fla.1994). Since this insurance contract was formed in Florida and the dispute centers on events that occurred in Florida, this case must be decided based on Florida law.

Under Florida law, the construction of an insurance policy and the extent of coverage is generally a question of law for the court. *Jones v. Utica Mut. Ins. Co.,* 463 So.2d 1153, 1157 (Fla.1985). If the language of the policy is ambiguous, the policy must be interpreted so as to provide coverage. However, a court may not rewrite the policy or add meaning to create an ambiguity. *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla.1986). There must be "a genuine inconsistency, uncertainty, or ambiguity in meaning [that] remains after resort to the ordinary rules of construction." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So.2d 938, 942 (Fla.1979). Where the language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language of the policy will be given the meaning it clearly expresses. *Florida Farm Bureau Ins. Co. v. Birge,* 659 So.2d 310, 312 (Fla. 2d DCA 1994) (citing *Jefferson Ins. Co. v. Sea World,* 586 So.2d 95 (Fla. 5th DCA 1991)). Further, ambiguity is not necessarily present when a contract requires interpretation, nor does failing to define a term create ambiguity per se. *See Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.,* 757 F.2d 1172 (11th Cir.1985); *Weldon v. All Am. Life Ins. Co.,*

605 So.2d 911 (Fla. 2d DCA 1992); *Jefferson,* 586 So.2d at 97. Finally, the duty to defend must be determined from the allegations in the complaint. *Payne v. United States Fidelity & Guar. Co.,* 625 F.Supp. 1189, 1193 (S.D.Fla.1985); *State Farm Fire & Casualty Co. v. Edgecumbe,* 471 So.2d 209, 210 (Fla. 1st DCA 1985). From these general considerations, we turn to the situation at hand.

Band does not dispute in its cross-motion that the employees' injuries were caused by contaminants and pollutants in the building's air.[1] Rather, Band argues that the exclusion does not apply because Band is not an "actual polluter" and because the pollutants are not discharged into the "environment." Band also alleges that Florida courts have not held that the pollution exclusion is unambiguous, and therefore this Court is not barred from finding ambiguity.

No Florida court has specifically addressed the interpretation of an absolute pollution exclusion. However, numerous other courts have had the opportunity to address absolute pollution exclusions. The majority of courts that have reviewed these absolute exclusions have found them to be unambiguous and have enforced them in accordance with their plain language. *See, e.g., United States Liab. Ins. Co. v. Bourbeau,* 49 F.3d 786 (1st Cir.1995); *Bituminous Cas. Corp. v. St. Clair Lime Co.,* 69 F.3d 547 (10th Cir.1995) (decision without published opinion); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118 (2d Cir.1990); *American States Ins. Co. v. F.H.S., Inc.,* 843 F.Supp. 187 (S.D.Miss.1994); *Essex Ins. Co. v. Tri–Town Corp.,* 863 F.Supp. 38 (D.Mass.1994); *Alcolac Inc. v. California Union Ins. Co.,* 716 F.Supp. 1546 (D.Md.1989); *Guilford Indus. Inc. v. Liberty Mut. Ins. Co.,* 688 F.Supp. 792 (D.Me.1988). This Court can find no language in the exclusion which would be ambiguous when applied to the facts of this case. Therefore, we move to Band's other arguments.

Band relies on cases interpreting an older version of the pollution exclusion for its argument that the exclusion applies only to "actual polluters." In those policies, there was an exception to the exclusion for those polluting occurrences that were "sudden and accidental." Several courts, in interpreting the "sudden and accidental" provision, looked to the intent of the drafters. *See, e.g., Payne v. United States Fidelity & Guar. Co.,* 625 F.Supp. 1189 (S.D.Fla.1985); *Niagara County v. Utica Mut. Ins. Co.,* 80 A.D.2d 415, 439 N.Y.S.2d 538 (1981); *Grinnell Mut. Reins. Co. v. Wasmuth,* 432 N.W.2d 495 (Minn.Ct. App.1988). Those courts concluded that since coverage was excluded only when the pollution was gradual or intended, that meant that the exclusion applied only to those who were actual polluters or industrial polluters rather than innocent owners. These courts looked behind the language of the policy to the alleged intent of the drafters to determine what the language meant. *Payne,* 625 F.Supp. at 1192. However, the language that gave rise to the "actual polluter" interpretation is absent from this policy. Therefore, the interpretations from that language cannot be applied to this case. Further, Florida law does not permit this Court to look to the drafters' intent when the exclusionary language is plain. *Excelsior,* 369 So.2d at 942. In this case, the language of the exclusion is clear and unambiguous. Nothing in the exclusion requires that the insured be the actual polluter for the exclusion to apply. The language requires only that the pollution occur at a premises owned or occupied by an insured. Therefore, Band's first argument for coverage fails.

Band also argues that the pollution exclusion should apply only to "environmental" pollution. Band again relies on cases interpreting older versions of the pollution exclusion for this argument. *See, e.g., West Am. Ins. Co. v. Tufco Flooring East, Inc.,* 104 N.C.App. 312, 409 S.E.2d 692 (1991); *Waste Management v. Peerless Ins. Co.,* 315

---

1. It is generally recognized that "sick building syndrome" is caused by a variety of contaminants in the indoor air that give rise to indoor air pollution. See Andrew Kopon, Jr. & Joseph C. Gergits, *Indoor Environment: Regulatory Developments and Emerging Standards of Care,* 62 Def. Couns.J. 47 (January 1995), and sources cited therein. *See also, Mackey v. TKCC, Inc.,* 134 Or.App. 121, 894 P.2d 1200 (1995) (discussing sick building syndrome as caused by indoor air pollution).

N.C. 688, 340 S.E.2d 374 (1986). In those cases, the courts first looked to the historical purpose of the pollution exclusion and held that the drafters intended the exclusion to limit coverage for clean-up costs imposed by EPA legislation. *West Am. Ins.,* 409 S.E.2d at 699. The courts then looked at the language requiring the discharge to be "onto land, into the atmosphere, or into water" and interpreted that to mean that the exclusion was applicable only when the pollutants were discharged into the outside environment. *Id.,* 409 S.E.2d at 700. However, as with Band's first argument, this pollution exclusion does not have the language interpreted by the other courts. Thus, the reasoning of those cases is inapplicable to the case at hand. Additionally, this Court cannot examine the history of the exclusion because the language is clear and unambiguous and to resort to history would, therefore, be contrary to Florida law.

Finally, several courts have found the absolute pollution exclusion applicable to indoor pollution. In *Essex Insurance Co. v. Tri-Town Corp.,* 863 F.Supp. 38 (D.Mass.1994), the insurance company sought a declaratory judgment that the absolute pollution exclusion barred coverage for injuries sustained when an ice resurfacing machine emitted carbon monoxide, causing injuries to several patrons of an ice skating rink. The court held that once the carbon monoxide was released into the atmosphere *of the rink,* the incident fell within the scope of the exclusion. *Id.* at 40–41. *See also, League of Minn. Cities Ins. Trust v. Coon Rapids,* 446 N.W.2d 419 (Minn.Ct.App.1989) (involving discharge of nitrogen dioxide from an ice resurfacing machine). Applying the reasoning of those courts, which were interpreting an identical policy exclusion to the one at hand, this Court finds that the dispersal of contaminants from the attic space of the building into the indoor air supply of the building would constitute a release of the contaminants into the environment of the building. Therefore, Band's second argument for coverage must fail.

### Conclusion

This Court finds that there is no ambiguity in the language of the pollution exclusion in the policy issued to Band by Plaintiff. Under Florida law, which controls in this case, this Court is barred from rewriting the terms or going beyond the language to examine the intent of the insurer or the expectations of the insured when the language of the policy is clear and unambiguous. Under the clear language of the policy, there is no coverage for bodily injury due to a release or dispersal of contaminants from the attic space of the building into the air supply of the building owned by Band. Where there is no possibility of coverage given the allegations in the pleadings, there is no duty to defend.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

(1) Plaintiff's Motion for Final Summary Judgment (Doc. No. 13) is GRANTED.

(2) Defendant's Cross–Motion for Summary Judgment (Doc. No. 17) is DENIED.

(3) The Clerk is directed to enter judgment in the Plaintiff's favor and CLOSE this case.

DONE AND ORDERED.