UNITED STATES FIRE INSURANCE CO., Plaintiff-Appellant Cross Respondent,

v.

ACE BAKING COMPANY, Defendant-Respondent Cross Appellant.†

Court of Appeals

*No. 91–0156. Submitted on briefs July 2, 1991.—Decided September 3, 1991.*

(Also reported in 476 N.W.2d 280.)

†Petition to review denied.

On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the briefs of *Jeffrey A. Schmeckpeper* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Joseph M. Nicks* of *Godfrey & Kahn, S.C.* of Green Bay.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. United States Fire Insurance Company appeals from a judgment that held it liable to its insured, Ace Baking Company, for the contamination of Ace Baking's products and packaging materials as a result of their having been stored in a warehouse near a supply of fabric softener. Ace Baking cross-appeals from a judgment that dismissed its claim against United States Fire

for bad faith. We conclude that United States Fire is not liable on its policy, and we reverse the trial court on that issue. Accordingly, the cross appeal is moot.

## I.

The facts are undisputed. Ace Baking manufactures ice-cream cones. During 1989, it stored products and packaging materials in a warehouse that also stored a fabric softener, *Bounce,* manufactured by the Proctor & Gamble Company. In late August of 1989, one of Ace Baking's customers complained that ice-cream cones it had purchased from Ace smelled and tasted like soap. Subsequently, it was discovered that a fragrance additive from the fabric softener, linalool, had affected the Ace Baking products and packaging materials making them unusable. Ace Baking claimed resulting losses, and sought payment of $148,111.08 from United States Fire. United States Fire refused payment, contending that there was no coverage because of a policy provision that excluded losses "caused by or resulting from . . . [r]elease, discharge or dispersal of 'pollutants.' " The parties agree that linalool is harmless when properly used in appropriate products.

United States Fire commenced this action, seeking a declaratory judgment that Ace Baking's losses caused by the linalool were not covered by the insurance policy. Ace Baking counterclaimed, alleging that United States Fire handled its claim in bad faith. The trial court granted summary judgment to Ace Baking on the coverage issue, but held that United States Fire did not act in bad faith.

## II.

As we have seen, the dispute on this appeal concerns an insurance-policy provision that excluded losses "caused by or resulting from . . . [r]elease, discharge or dispersal of 'pollutants.' " Although the policy notes that "[w]ords and phrases that appear in quotation marks have special meaning," and refers to the policy's definition section for those special meanings, the word "pollutants" is not defined by the policy even though it appears in the policy in quotation marks. The trial court held that the word "pollutants" was ambiguous because it was capable of two recognized meanings. First, it could mean "toxic materials." Second, it could "be a lot broader than just toxic materials." The trial court concluded that "pollutants" should be given its narrow meaning:

> The ordinary person would interpret pollutant as something that would adversely affect the environment or a person's health. The substance linalool is not such a pollutant as the affidavits indicate but may and apparently can affect a product's taste or smell.

"It is well settled that the construction of an insurance policy is a question of law for the court and, therefore, is reviewed *de novo.*" *Kaun v. Indus. Fire & Casualty Ins. Co.,* 148 Wis. 2d 662, 667, 436 N.W.2d 321, 323 (1989). Insurance policies, like other contracts, are construed to ascertain and effectuate the parties' intent. *Id.,* 148 Wis. 2d at 668–669, 436 N.W.2d at 324; *Ehlers v. Colonial Penn Ins. Co.,* 81 Wis. 2d 64, 74, 259 N.W.2d 718, 724 (1977). Thus, a clear contractual provision must be construed as it stands. *Duncan v. Ehrhard,* 158 Wis. 2d 252, 259, 461 N.W.2d 822, 825 (Ct. App. 1990). Ambi-

guities, however, are construed against the party who drafted the contract, here United States Fire. *See Northwestern Nat. Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 254-255, 400 N.W.2d 33, 37 (Ct. App. 1986).

A contractual term in an insurance policy is ambiguous if it is "reasonably or fairly susceptible to more than one construction," *Garriguenc v. Love,* 67 Wis. 2d 130, 135, 226 N.W.2d 414, 417 (1975), when read in its "context," *Just v. Land Reclamation, Ltd.,* 155 Wis. 2d 737, 744-745, 456 N.W.2d 570, 572-573 (1990), *modified on other grounds,* 157 Wis. 2d 507 (1990). This is key; the mere fact that a word has more than one meaning does not necessarily make that word "ambiguous" if only one meaning comports with the parties' objectively reasonable expectations. *See Garriguenc,* 67 Wis. 2d at 134-135, 226 N.W.2d at 417. Thus,

> [M]erely being able to conjure up a remotely possible second interpretation is not sufficient to invoke the ambiguity rule [and thus resolve the ambiguity against the insurer]. If it were, no contract would be safe from modification by construction.[1]

*Wiesmueller v. Interstate Fire & Cas. Co.,* 568 F.2d 40, 46 (7th Cir. 1978) (applying Wisconsin law). Additionally, a word is not ambiguous merely because it is undefined in the policy, *Welter v. Singer,* 126 Wis. 2d 242, 248, 376 N.W.2d 84, 86 (Ct. App. 1985), or because the

---

[1]*Cf. Trident Center v. Connecticut Gen. Life Ins. Co.,* 847 F.2d 564, 568-570 (9th Cir. 1988) (criticizing the California rule that no contract can ever have a meaning so plain that resort to extrinsic evidence is not permissible, because words " 'do not have absolute and constant referents.' " (quoting *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal. 2d 33, 38, 442 P.2d 641, 644, 69 Cal. Rptr. 561, 561 (1968))).

parties may disagree about its meaning, *Bartel v. Carey,* 127 Wis. 2d 310, 314, 379 N.W.2d 864, 866 (Ct. App. 1985); *see Just,* 155 Wis. 2d at 758, 456 N.W.2d at 578 ("[T]he mere controversy concerning the meaning of a contract term does not itself establish an ambiguity."). *Garriguenc* is particularly on point here.

The plaintiff in *Garriguenc* was injured when she was struck by an automobile being driven in a demolition derby on land leased to the promoter by the Ozaukee County Agricultural Society. *Id.,* 67 Wis. 2d at 131–132, 226 N.W.2d at 415–416. Garriguenc sued the agricultural society's insurer, among others. The insurance policy, however, excluded "bodily injury or property damage arising out of . . . automobile or motorcycle racing or stunting," and the insurance company sought dismissal of the claim against it on that ground. *Id.,* 67 Wis. 2d at 132–133, 226 N.W.2d at 416 (emphasis in original deleted). The trial court found that the clause did not bar coverage for all contests involving automobiles and concluded that a demolition derby did not involve either "racing" or "stunting." *Id.,* 67 Wis. 2d at 133–134, 226 N.W.2d at 416. The supreme court reversed. It concluded that "a 'demolition derby' falls within the definition of 'racing' or 'stunting' or a combination of both." *Id.,* 67 Wis. 2d at 136, 226 N.W.2d at 418. *Garriguenc* looked to the essence of the exclusion, and explained:

> A demolition derby is both a race and stunt. Involved are characteristics from each, speed, the striving toward a goal, the necessity of skill, and an unusual event undertaken to gain publicity.

*Id.,* 67 Wis. 2d at 137, 226 N.W.2d at 418. Here, the essence of the exclusion, reasonably and fairly encompassed by the policy provision that excludes losses

"caused by or resulting from . . . [r]elease, discharge or dispersal of 'pollutants,' " is that there is no coverage for the contamination of Ace Baking's products by any substance foreign to those products. Thus, *Webster's Third New International Dictionary of the English Language* 1756 (1976) defines "pollutant" as "something that pollutes: a polluting substance, medium, or agent," and "pollute" as, *inter alia,* "to make physically impure or unclean." Just as "what is one man's meat is another man's rank poison," Lucretius, *De Rerum Natura,* 293 (W.H.D. Rouse trans. 3rd ed. 1947), it is a rare substance indeed that is *always* a pollutant; the most noxious of materials have their appropriate and non-polluting uses. Thus, for example, oil will "pollute" water and thus foul an automobile's radiator, but be essential for the engine's lubrication. Conversely, water can "pollute" oil and thus foul the engine, but be essential for the automobile's radiator. Here, although linalool is a valued ingredient for some uses, it fouled Ace Baking's products. Accordingly, it was a "pollutant" in relation to those products, and coverage for the resulting damages is excluded from the United States Fire policy.

*By the Court.*—Judgments reversed.