Sandra DONALDSON, April Schmitt and John D. Schmitt, Plaintiffs,

STATE of Wisconsin, Subrogated-Plaintiff,

v.

URBAN LAND INTERESTS, INC., Defendant-Appellant-Petitioner,

The HANOVER INSURANCE COMPANY, Defendant-Respondent,

BARSTOW ASSOCIATES, a Limited Partnership, North American Mechanical, Inc., ABC Insurance Company and DEF Insurance Company, Defendants.

Supreme Court

*No. 95–3015. Oral argument April 30, 1997.—Decided June 24, 1997.*

(Also reported in 564 N.W.2d 728.)

STEINMETZ, J., dissents.

For the defendant-appellant-petitioner there were briefs by *David G. Walsh, Douglas B. Clark* and *Foley & Lardner*, Madison and oral argument by *Douglas B. Clark*.

For the defendant-respondent there was a brief by *Jeffrey Leavell, Gregory Boe* and *Jeffrey Leavel, S.C.*, Racine and oral argument by *Jeffrey Leavell*.

Amicus curiae was filed by *Eric Englund and Wisconsin Insurance Alliance*, Madison, of counsel, *Laura A. Foggan, Marilyn E. Kerst, James R. Knox* and *Wiley, Rein & Fielding*, Washington, D.C. for the Insurance Environmental Litigation Association and Wisconsin Insurance Alliance.

¶ 1. ANN WALSH BRADLEY, J. Urban Land Interests, Inc. (ULI) seeks review of a court of appeals' decision which affirmed a circuit court grant of summary judgment to ULI's insurer, the Hanover Insurance Company (Hanover).[1] ULI asserts that insurance policies issued to it by Hanover provide coverage for personal injury claims arising from the

---

[1] *See Donaldson v. Urban Land Interests, Inc.*, 205 Wis. 2d 404, 556 N.W.2d 100 (Ct. App. 1996) (affirming an order of the Circuit Court for Waukesha County, Robert G. Mawdsley, Judge).

inadequate ventilation of exhaled carbon dioxide in an office building managed by ULI. The court of appeals and the circuit court concluded that exhaled carbon dioxide is a pollutant, and that the pollution exclusion clause contained in the Hanover policies barred coverage. Because we conclude that the policies' pollution exclusion clause is ambiguous and that ULI could reasonably expect coverage from Hanover for the plaintiffs' claims, we reverse the decision of the court of appeals and remand to the circuit court for further proceedings.

¶ 2.    For purposes of summary judgment, the relevant facts are undisputed. This is a "sick building" case. The plaintiffs in the underlying action allege that an inadequate air exchange ventilation system in a ULI-managed office building caused an excessive accumulation of carbon dioxide in their work area.[2] The resultant poor air quality allegedly caused the plaintiffs to sustain the following injuries: headaches, sinus problems, eye irritation, extreme fatigue, upset stomach, asthma, sore throat, nausea, and pounding ears.

¶ 3.    The plaintiffs commenced an action against ULI, Hanover, and others. Hanover filed a motion for summary judgment on the ground that both its comprehensive general liability and umbrella excess liability policies issued to ULI excluded coverage for

---

[2] Hanover notes that as a result of the inadequate ventilation, other "air contaminants" likely accumulated in the plaintiffs' work area. Brief of Hanover at 5. However, the circuit court and court of appeals' decisions have dealt only with the accumulation of exhaled carbon dioxide, and we accepted the petition for review on the exhaled carbon dioxide issue. We limit the scope of our review accordingly.

damages arising from the plaintiffs' injuries. Both policies exclude coverage for:

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
>> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .
>
> (2) . . .Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

¶ 4. The circuit court granted Hanover's motion for summary judgment. The court determined that the buildup of carbon dioxide is a "gaseous irritant," and therefore constitutes a "pollutant" under the policies. On that basis, the circuit court concluded that the pollution exclusion clause denied coverage to ULI for personal injuries resulting from the buildup of carbon dioxide. ULI appealed.

¶ 5. A divided court of appeals affirmed. Engaging in a two-part analysis, the majority first determined that exhaled carbon dioxide is a "pollutant" within the meaning of the pollution exclusion clause. *Donaldson v. Urban Land Interests, Inc.*, 205 Wis. 2d 404, 410–12, 556 N.W.2d 100 (Ct. App. 1996). The majority next determined that the exhaled carbon dioxide "was discharged within the meaning of the exclusion clause." *Id.* at 412–14. On these bases, the majority concluded that Hanover was not obligated to

furnish coverage to ULI for the injuries alleged by the plaintiffs. Finally, the majority rejected ULI's assertion that the pollution exclusion clause is intended "to apply only in situations of environmental injury or damage to soil, air or water—not to nonenvironmental injury situations such as the instant case." *Id.* at 414.

¶ 6. Judge Anderson dissented, concluding that the pollution exclusion clause is ambiguous, and that it "can be read to limit coverage to liability for industrial environmental damages as that is understood by a reasonable person." *Id.* at 416. In Judge Anderson's view, a reasonable insured "would not expect [the clause] to include the avoidance of liability for the accumulation of carbon dioxide in an office because provisions were not made for introducing fresh air into the office." *Id.* ULI filed a petition for review in this court.

¶ 7. The sole question before this court is whether the circuit court properly granted Hanover's motion for summary judgment on the basis that the policies at issue did not provide coverage for personal injury claims arising from excessive concentrations of exhaled carbon dioxide in the workplace. We first consider whether exhaled carbon dioxide is unambiguously within the pollution exclusion clause's definition of "pollutant." If so, we must then determine whether exhalation of carbon dioxide constitutes a discharge, dispersal, etc., under the terms of the policies. We agree with the court of appeals that "[b]oth inquiries must be answered in the positive for the pollution exclusion clause to apply." *Donaldson*, 205 Wis. 2d at 409.

■

¶ 8. We review summary judgment rulings independently, *Burkes v. Klauser*, 185 Wis. 2d 308, 327, 517 N.W.2d 503 (1994), using the same methodology as

that used by the circuit court. *Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980). A motion for summary judgment must be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (1995–96). We interpret an insurance policy's terms under a *de novo* standard, without deference to the decisions of the circuit court and court of appeals. *Kaun v. Industrial Fire & Cas. Ins. Co.*, 148 Wis. 2d 662, 667, 436 N.W.2d 321 (1989).

¶ 9. Interpretation of insurance policies is governed by the same rules of construction that apply to other contracts. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597 (1990). Under the doctrine of *contra proferentem*,[3] ambiguities in a policy's terms are to be resolved in favor of coverage, while coverage exclusion clauses are narrowly construed against the insurer. *See Smith*, 155 Wis. 2d at 811. The principle underlying the doctrine is straightforward. As the drafter of the insurance policy, an insurer has the opportunity to employ expressive exactitude in order to avoid a misunderstanding of the policy's terms. Because the insurer is the party best situated to eliminate ambiguity in the policy, the policy's terms should be interpreted as they would be understood from the perspective of a reasonable person in the position of the insured. *See General Cas. Co. of Wisconsin v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997).

¶ 10. In determining whether the policy definition of "pollutant" unambiguously includes exhaled carbon dioxide, we begin with the well-established rule

---

[3] Literally, "against the offeror."

that words or phrases in an insurance policy are ambiguous if, when read in context, they are susceptible to more than one reasonable interpretation. *Tempelis v. Aetna Cas. & Sur. Co.*, 169 Wis. 2d 1, 10, 485 N.W.2d 217 (1992). Absent a finding of ambiguity, this court will not use the rules of construction to rewrite the language of an insurance contract. *See Gonzalez v. City of Franklin*, 137 Wis. 2d 109, 122, 403 N.W.2d 747 (1987).

¶ 11.  Under the policies, a "pollutant" is defined as:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[4]

The majority of the court of appeals concluded that the policy definition of "pollutant" unambiguously includes exhaled carbon dioxide because carbon dioxide is a gaseous substance which, at higher concentrations, can become an irritant. *Donaldson*, 205 Wis. 2d at 411. We disagree.

¶ 12.  The pollution exclusion clause at issue here was intended by both Hanover and ULI to have broad application. However, we are not satisfied that this fact brings exhaled carbon dioxide unambiguously within

---

[4] In *United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 476 N.W.2d 280 (Ct. App. 1991), the court of appeals furnished a definition of "pollutant" where the insurance policy was silent on the meaning of the term. However, unlike the *Ace Baking* policy, the policy at issue here provides a definition of "pollutant." We therefore conclude that the gloss given to the term "pollutant" in *Ace Baking* is not germane to the instant analysis.

the policy definition of "pollutant." Instead, we agree with Judge Anderson's dissent that the pollution exclusion clause does not plainly and clearly alert a reasonable insured that coverage is denied for personal injury claims that have their genesis in activities as fundamental as human respiration.

¶ 13.   As Judge Anderson noted in his dissent below, the decision of the United States Court of Appeals for the Seventh Circuit in *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir. 1992), is instructive on this point:

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for there is virtually no substance or chemical in existence that would not irritate or damage some person or property. Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.[5]

*Id.* at 1043 (citation and quotation marks omitted).

¶ 14.   Like the examples cited by the *Pipefitters* court, inadequately ventilated carbon dioxide from

---

[5] The pollution exclusion clause at issue in *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir. 1992), is essentially identical to the one in question in the instant case.

human respiration would not ordinarily be characterized as a "pollutant." Exhaled carbon dioxide can achieve an injurious concentration in a poorly ventilated area, but it would not necessarily be understood by a reasonable insured to meet the policy definition of a "pollutant."

¶ 15.    The reach of the pollution exclusion clause must be circumscribed by reasonableness, lest the contractual promise of coverage be reduced to a dead letter. As the *Pipefitters* court further explained:

> [C]ourts have taken a common sense approach when determining the scope of pollution exclusion clauses. . . .The bond that links these cases is plain. All involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry. There is nothing unusual about paint peeling off of a wall, asbestos particles escaping during the installation or removal of insulation, or paint drifting off the mark during a spraypainting job. A reasonable policyholder, these courts apparently believed, would not characterize such routine incidents as pollution.

*Id.* at 1043–44 (citations omitted). The plaintiffs' injuries in the instant case also resulted from an everyday activity "gone slightly, but not surprisingly, awry." We conclude that the pollution exclusion clause is ambiguous because ULI could reasonably expect coverage on the facts of this case.[6]

---

[6] Because our ambiguity determination is dispositive in this case, we do not consider whether exhalation of carbon dioxide is a discharge, dispersal, etc., under the pollution exclusion clause. *See Leverence v. United States Fidelity & Guar.*, 158 Wis. 2d 64, 462 N.W.2d 218 (Ct. App. 1990).

¶ 16.  It is also significant that, unlike the nonexhaustive list of pollutants contained in the pollution exclusion clause, exhaled carbon dioxide is universally present and generally harmless in all but the most unusual instances. In addition, the respiration process which produces exhaled carbon dioxide is a necessary and natural part of life. We are therefore hesitant to conclude that a reasonable insured would necessarily view exhaled carbon dioxide as in the same class as "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

¶ 17.  Finally, our conclusion that ULI could reasonably expect coverage for personal injury claims arising from inadequately ventilated exhaled carbon dioxide is supported by case law from foreign jurisdictions. Several courts have found coverage in the context of substances which arguably fit the broad definition of "pollutant" in the standard comprehensive general liability policy. *See, e.g., Westchester Fire Ins. Co. v. City of Pittsburgh, Kansas*, 768 F. Supp. 1463 (D. Kan. 1991) (malathion, an organic phosphate insecticide); *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762 (Mass. 1992) (lead-based paint); *Minerva Enterprises, Inc. v. Bituminous Cas. Corp.*, 851 S.W.2d 403 (Ark. 1993) (raw sewage); *Center for Creative Studies v. Aetna Life & Cas. Co.*, 871 F. Supp. 941 (E.D. Mich. 1994) (photographic chemicals); *West Am. Ins. Co. v. Tufco Flooring East, Inc.*, 409 S.E.2d 692 (N.C. Ct. App. 1991) (fumes from styrene monomer resin).[7]

---

[7] *But see West Am. Ins. Co. v. Band & Desenberg*, 925 F. Supp. 758 (M.D. Fla. 1996); *American States Ins. Co. v. F.H.S., Inc.*, 843 F. Supp. 187 (S.D. Miss. 1994); *City of Maple Lake v. American States Ins. Co.*, 509 N.W.2d 399 (Minn. Ct. App. 1993).

¶ 18. We conclude that the insurance policies' definition of "pollutant" is ambiguous, and that ULI could reasonably expect coverage from Hanover for personal injury claims arising from the inadequate ventilation of exhaled carbon dioxide. The circuit court therefore erred in granting Hanover's motion for summary judgment. Accordingly, we reverse the decision of the court of appeals, and remand to the circuit court for further consideration of the issues remaining in this case.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded.

¶ 19. DONALD W. STEINMETZ, J. (*dissenting*). I conclude that the pollution exclusion at issue in this case is unambiguous and that exhaled carbon dioxide is a "pollutant" that was "discharged" into the workplace under the definitions of the policy. Coverage was properly denied in this case because a "reasonable insured" would not expect coverage for injuries resulting from exhaled breath. I would therefore affirm the court of appeals decision upholding the grant of summary judgment to the Hanover Insurance Company.

¶ 20. The insurance policies at issue in this case contain a clear and unambiguous absolute pollution exclusion. The policies define "pollutant" with careful specificity, intending the term to encompass a broad range of pollutants. *See* majority op. at 228, 231. The majority attempts to create ambiguity where none exists so that it might interpret the contract in favor of coverage for the insured. It writes that "the pollution exclusion clause is ambiguous because ULI could reasonably expect coverage on the facts of this case." Majority op. at 233. However, the mere fact that the

235

parties disagree over coverage is insufficient to render a term ambiguous. *See United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 504, 476 N.W.2d 280 (Ct. App. 1991), citing *Bartel v. Carey*, 127 Wis. 2d 310, 314, 379 N.W.2d 864 (Ct. App. 1985).

¶ 21.   A word, phrase, or term is not ambiguous merely because the parties involved may disagree about its meaning. *Id.* As the majority notes, if a word, phrase, or term is plain on its face, then this court should not apply the rules of construction to rewrite the language of the contract. Majority op. at 230–31 (citation omitted). Instead, this court is required to apply the meaning of the language as it is used in the contract or policy.

¶ 22.   In the case at bar, the term "pollutant" is clearly, plainly, and explicitly defined in unambiguous terms as:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Like the court of appeals, I conclude that the term "pollutant" unambiguously includes exhaled carbon dioxide because it is a "gaseous irritant" in certain concentrations, and carbon dioxide is "waste" that is expelled from the human body.

¶ 23.   Although the majority quickly dismisses its importance in a footnote, *see* majority op. at 231, note 4, the *Ace Baking* case is relevant to the issues involved in the case at bar. In *Ace Baking*, ice cream cones manufactured by Ace were stored in a warehouse next to some fabric softener. One of Ace's customers complained that the cones had an odd taste and an

investigation was subsequently conducted. The investigation revealed that a fragrance additive, linalool, from the fabric softener rendered the ice cream cones unusable. Ace Baking presented a claim to its insurer, who subsequently denied coverage under the insurance policy's pollution exclusion clause.

¶ 24. The language of the pollution exclusion policy in *Ace Baking* was similar to that of Hanover at issue in this case. It excluded losses "caused by or resulting from. . .[r]elease, discharge or dispersal of 'pollutants.' " *Ace Baking*, 164 Wis. 2d at 501. However, the policy did not include a definition of "pollutant." *Id*. For this reason alone, the majority cursorily concludes that *Ace Baking* "is not germane to the instant analysis." Majority op. at 231, note 4. I conclude that *Ace Baking* is indeed germane to the instant analysis.

¶ 25. The *Ace Baking* court concluded that the linalool was a "pollutant" within the meaning of the pollution exclusion clause and, therefore, coverage was excluded under the terms of the policy. It decided this despite the fact that "[t]he parties agree that linalool is harmless when properly used in appropriate products." 164 Wis. 2d at 502. The court explained that a normally harmless and commonplace product can still be a "pollutant" within the commonly accepted definition of the term. "[I]t is a rare substance indeed that is always a pollutant; the most noxious of materials have their appropriate and non-polluting uses." *Id*. at 505. In fact, the court explains, even something as universal and generally harmless as water may be a pollutant under the wrong conditions. *Id*.

¶ 26. Like the linalool in *Ace Baking*, exhaled carbon dioxide can be a "pollutant" under certain circumstances even though it is characterized by the majority as "universally present and generally harm-

less." Majority op. at 234. The summary judgment record in this case presents affidavits and exhibits which clearly demonstrate that this "generally harmless" substance can become extremely harmful in high concentrations. The mere fact that it is a common and natural product does not, as the majority suggests, mean that it cannot also be considered a "pollutant" within the meaning of the policy. *See Ace Baking*, 164 Wis. 2d at 505.

¶ 27.   I am further compelled to conclude that the pollution exclusion clause unambiguously covers exhaled carbon dioxide by the fact that it clearly falls within one of the specific examples of a "pollutant" listed in the policy—"waste." It is a commonly accepted fact that exhaled carbon dioxide is a waste product of the natural process of breathing. Because the language of the policy uses only the general term "waste," it makes sense to assume that the insurer and the insured anticipated that all waste would be covered under the exclusion.

¶ 28.   Despite the fact that Hanover made the argument regarding waste before this court, the majority opinion fails to discuss, or even mention, this issue. Perhaps this is because the majority sees no way to get around this unambiguous example provided in the language of the policy.

¶ 29.   The majority also never reaches the second issue in this case: whether the exhalation of carbon dioxide is a "discharge, dispersal, seepage, migration, release, or escape" of a pollutant. I conclude that it is a "discharge" that falls within the language of the pollution exclusion.

¶ 30.   The dictionary describes a "discharge" as "a flowing out or pouring forth; emission; secretion." *The American Heritage Dictionary* 530 (3d ed. 1992). Simi-

238

larly, the dictionary defines "exhale" as "to emit air or vapor." *Id.* at 641. Based on these common definitions, exhaled or emitted breath is clearly a discharge within the meaning of the pollution exclusion because it is an "emission" from the human body that "pours forth" into the air.

¶ 31.  Finally, and perhaps most importantly, I stress that the standard to be applied is whether a reasonable insured would anticipate coverage in a certain circumstance. *See General Cas. Co. v. Hills*, 209 Wis. 2d 167, 561 N.W.2d 718, 722 (1997). I conclude that a reasonable insured would not expect that insurance would cover injuries caused from breathing in exhaled breath. If we accept the majority's assertion, then it follows that one would expect coverage for illnesses caused from inhaling secondhand smoke. After all, secondhand cigarette smoke, like carbon dioxide, is "universally present" and is "generally harmless" if inhaled in small quantities. Would a tavern owner expect coverage in a suit by bar patrons who have become sick from inhaling exhaled cigarette smoke? I think not. Similarly, I conclude that a "reasonable insured" would not expect coverage for injuries resulting from breathing exhaled carbon dioxide.

¶ 32.  The language of the pollution exclusion in this case is unambiguous. Exhaled carbon dioxide is both a "pollutant" within the meaning of the policy, and "discharged" within the meaning of the policy. A reasonable insured would not have anticipated coverage in this case. Consequently, I conclude that the Hanover Insurance Company properly denied coverage to ULI under the pollution exclusion clause. The court of appeals should be affirmed in this case.

¶ 33.   For the foregoing reasons, I dissent.