Kevin PEACE, a Minor, By His Guardian Ad Litem, Robert J. Lerner, Plaintiff-Joint-Appellant,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY, Defendant-Respondent,†

DJUKIC ENTERPRISES, INC., Defendant-Joint-Appellant,

STATE FARM GENERAL INSURANCE COMPANY, Darrell Harding, Edmund J. Durand and Wisconsin Department of Health and Social Services, Defendants.

Court of Appeals

*No. 96–0328. Submitted on briefs October 7, 1997.—Decided November 18, 1997.*

(Also reported in 573 N.W.2d 197.)

†Petition to review granted.

On behalf of the plaintiff-joint-appellant, Kevin Peace, and defendant-joint-appellant, Djukic Enterprises, Inc., the cause was submitted on the joint briefs and supplemental joint briefs of *Robert J. Lerner* and *B. Michele Sumara* of *Perry, Lerner & Quindel, S.C.*, Milwaukee, for plaintiff-joint-appellant, and *James E. Culhane* of *Davis & Kuelthau, S.C.* and *Michael A. Mesirow* of *Kasdorf, Lewis & Sweitlik, S.C.*, Milwaukee, for defendant-joint appellant.

On behalf of the defendant-respondent, the cause was submitted on the brief and supplemental brief of *John R. Pendergast, Jr.* of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, Milwaukee.

Before Fine, Schudson and Curley, JJ.

SCHUDSON, J. Kevin Peace, by his guardian ad litem, and Djukic Enterprises, Inc., (collectively, "Peace") appeal from the trial court judgment granting summary judgment to Northwestern National Insurance Company. Peace argues that the trial court erred

in concluding that Northwestern had no duty to defend or indemnify because the pollution exclusion clause of the policy covering the residence the Peace family rented from Djukic precluded coverage for the damages Kevin allegedly suffered from ingesting lead-based paint.

Earlier this year, a different panel of this court affirmed the trial court's judgment. *See Peace v. Northwestern Nat'l Ins. Co.*, No. 96–0328, unpublished slip op. (Wis. Ct. App., Feb. 4, 1997), *vacated*, 211 Wis. 2d 529, 568 N.W.2d 297 (1997). This court concluded that this case was controlled by *Vance v. Sukup*, 207 Wis. 2d 576, 558 N.W.2d 683 (Ct. App. 1996), *vacated*, 211 Wis. 2d 529, 568 N.W.2d 297 (1997), and the distinction *Vance* had drawn between lead from "intact accessible painted surfaces," and lead from "paint chips, paint flakes and dust." *Vance*, 207 Wis. 2d at 582–83, 558 N.W.2d at 686. *Vance* had relied, in part, on *Donaldson v. Urban Land Interests, Inc.*, 205 Wis. 2d 404, 556 N.W.2d 100 (Ct. App. 1996), *rev'd*, 211 Wis. 2d 224, 564 N.W.2d 728 (1997). *See Vance*, 207 Wis. 2d at 582, 558 N.W.2d at 686. On June 24, 1997, however, the supreme court reversed this court's *Donaldson* decision. *See Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 564 N.W.2d 728 (1997). On July 25, 1997, the supreme court summarily vacated this court's previous opinion in the instant case and ordered reconsideration in light of its decision in *Donaldson*.[1]

In light of *Donaldson*, we conclude that the *Vance* distinction between lead from "intact accessible painted surfaces" and lead from "paint chips, paint flakes and dust" is immaterial for purposes of deter-

---

[1] We then ordered the parties to submit supplemental briefs, which we have reviewed in giving further consideration to this appeal.

mining coverage excluded by a pollution exclusion clause. Accordingly, consistent with *Donaldson*, we reverse.

Kevin Peace, by his guardian ad litem, sued Djukic Enterprises, Inc., and its insurer, Northwestern, among others, alleging he was injured by lead-based paint in the residence his family rented from Djukic. The complaint alleged that "between August, 1987 and March, 1989, [Kevin] sustained lead poisoning by ingesting lead derived from paint chips, paint flakes and dust that was contaminated with lead derived from lead based paint."

The Northwestern policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and to "defend any 'suit' seeking those damages." The policy's pollution exclusion clause, however, stated that the policy provided no coverage for " '[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." The policy defined "pollutants" as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

Northwestern denied coverage based on the policy's pollution exclusion and moved for summary judgment. Opposing Northwestern's motion, Peace argued that pollution exclusion clauses are intended to apply only to environmental pollution and not to residential lead poisoning cases. Peace also argued that the act of ingesting lead paint does not fall within the exclusion-triggering events of "discharge, dispersal, release or escape," and that lead paint is not a "pollutant."

The trial court rejected Peace's arguments and held that *United States Fire Insurance Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 476 N.W.2d 280 (Ct. App. 1991), controlled. In *Ace Baking*, this court concluded that a fabric softener, which had migrated to ice cream cones making them smell and taste of soap, was a "pollutant" in relation to the cones and, therefore, the pollution exclusion applied. Similarly, in the instant case, the trial court concluded that lead paint was a pollutant and posed a serious health risk when not confined to its intended use of covering walls and, therefore, that the pollution exclusion clause precluded coverage. Thus, the trial court granted summary judgment, concluding that Northwestern had no duty to defend or indemnify Djukic.

In the previous decision addressing the appeal in this case, this court concluded, in part:

> [O]ur recent decision, *Vance v. Sukup*, is dispositive of this case. In *Vance*, we analyzed whether an insurer had a duty to defend based on whether there was coverage arising from a child's " 'ingesting lead derived from intact accessible painted surfaces, paint chips, paint flakes and dust that was contaminated with lead derived from lead based paint at the premises.' " We concluded that, analogous to the fabric softener in *Ace Baking*, lead paint was a contaminant under the pollution exclusion clause "[o]nce the lead escaped from the painted surfaces . . . either by leaving the paint or because the paint itself chipped off." We went on to conclude, however, that the insurer nevertheless had a duty to defend because the plaintiff's complaint had also alleged injury resulting from " '*intact*' accessible painted surfaces." By contrast, the Peace complaint fails to allege any injury result-

ing from lead other than that "derived from paint chips, paint flakes and dust."

*Peace*, unpublished slip op. at 5 (citations omitted). We now conclude, however, that the distinction between lead from "intact accessible painted surfaces" and lead from "paint chips, paint flakes and dust" is immaterial for purposes of determining coverage excluded by a pollution exclusion clause.

In *Donaldson*, the supreme court summarized its standards of review of a summary judgment determination of coverage under a policy containing a pollution exclusion clause:

> We review summary judgment rulings independently, using the same methodology as that used by the circuit court. A motion for summary judgment must be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. We interpret an insurance policy's terms under a *de novo* standard, without deference to the decisions of the circuit court and court of appeals.
>
> Interpretation of insurance policies is governed by the same rules of construction that apply to other contracts. Under the doctrine of *contra proferentem*, ambiguities in a policy's terms are to be resolved in favor of coverage, while coverage exclusion clauses are narrowly construed against the insurer.

*Donaldson*, 211 Wis. 2d at 229–30, 564 N.W.2d at 731 (citations omitted) (footnotes omitted). Similarly, we employ a *de novo* review of the trial court's summary judgment determination of whether Northwestern's pollution exclusion clause precludes coverage for Kevin Peace's alleged injuries and thus relieves Northwestern of any duty to defend Djukic. *See American States*

*Ins. Co. v. Skrobis Painting & Decorating, Inc.*, 182 Wis. 2d 445, 450, 513 N.W.2d 695, 697 (Ct. App. 1994) (construction and application of pollution exclusion clause reviewed independently by court of appeals).

■ We interpret insurance contracts as would a reasonable person in the insured's position, and we construe exclusion clauses strictly against the insurer. *Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis. 2d 77, 90–91, 540 N.W.2d 26, 32 (Ct. App. 1995). "An insurance company's duty to defend an insured sued by a third party is determined solely by the allegations in that third party's complaint." *Production Stamping Corp. v. Maryland Cas. Co.*, 199 Wis. 2d 322, 326, 544 N.W.2d 584, 586 (Ct App. 1996) (citation omitted). Any question about whether an "insurance company has a duty to defend is resolved in favor of the insured." *Id.* at 326–27, 544 N.W.2d at 586 (internal quotation marks and quoted source omitted).

In this case, we must consider whether lead "derived from paint chips, paint flakes and dust" is a "pollutant[ ]" or "contaminant" under Northwestern's pollution exclusion clause. If it is, then the clause excludes coverage. If it is not (or if it is uncertain whether such lead is a contaminant), then the clause does not exclude coverage or preclude Northwestern's duty to defend.

Our previous decision in this case was based on *Ace Baking* and *Vance* and the premise that lead becomes a contaminant only "[o]nce the lead escape[s] from the painted surfaces, . . . either by leaving the paint or because the paint itself chipped off." *Vance*, 207 Wis. 2d at 582, 558 N.W.2d at 686. In *Donaldson*, however, the supreme court, provided a decision that implicitly rejects that premise. Analyzing whether a

pollution exclusion clause encompassed exhaled carbon dioxide in a "sick building," the supreme court concluded "that the pollution exclusion clause does not plainly and clearly alert a reasonable insured that coverage is denied for personal injury claims that have their genesis in activities as fundamental as human respiration." *Donaldson*, 211 Wis. 2d at 232, 564 N.W.2d at 732.

Although *Donaldson* dealt with the application of a pollution exclusion clause to exhaled carbon dioxide, it extensively relied on *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir. 1992), which specifically referred to the very lead paint distinction at issue in the instant case:

> [C]ourts have taken a common sense approach when determining the scope of pollution exclusion clauses . . . . The bond that links these cases is plain. All involve injuries resulting from everyday activities gone slightly, but not surprisingly, awry. *There is nothing unusual about paint peeling off of a wall*, asbestos particles escaping during the installation or removal of insulation, or paint drifting off the mark during a spraypainting job. A reasonable policyholder, these courts apparently believed, would not characterize such routine incidents as pollution.

*Donaldson*, 211 Wis. 2d at 233, 564 N.W.2d at 732 (quoting *Pipefitters*, 976 F.2d at 1043–44) (emphasis added).[2] The supreme court then concluded that "[t]he

---

[2] The supreme court, referring to cases in which "courts have found coverage in the context of substances which arguably fit the broad definition of 'pollutant' in the standard comprehensive general liability policy," also specifically cited one involving "lead-based paint." *Donaldson v. Urban Land*

plaintiffs' injuries . . . also resulted from an everyday activity 'gone slightly, but not surprisingly, awry,' " and "that the pollution exclusion clause is ambiguous because [the insured] could reasonably expect coverage." *Id.* Similarly, painted surfaces in a residence routinely chip and peel. Therefore, whether a child ingests lead from paint from a painted surface, or from paint chips, flakes, or dust after paint has escaped its intended surface, the child may suffer injury "from an activity 'gone slightly, but not surprisingly, awry.' " *Id.* (quoting *Pipefitters*, 976 F.2d at 1044).

Thus, to summarize: (1) *Vance* concluded that lead from paint from intact surfaces was not a contaminant, but that lead from paint chips, flakes, or dust was a contaminant; and (2) *Donaldson*, drawing on *Pipefitters*, now provides the rationale obliterating the legal significance of the factual distinction *Vance* drew. Therefore, the only issue remaining in the instant appeal is whether lead from paint that Kevin's complaint alleged he[/] ingested "from paint chips, paint flakes and dust" is a contaminant.

In *Vance*, in addition to drawing the distinction we now disavow, this court concluded "that lead is not a 'contaminant' in paint to which it was added deliberately by the manufacturer." *Vance*, 207 Wis. 2d at 581, 558 N.W.2d at 686. Particularly in light of *Donaldson*, that conclusion is sound. Now, there no longer being any legally significant distinction between lead from paint from intact surfaces and lead from paint chips, flakes, or dust, we conclude that lead in paint chips, flakes, or dust is not a contaminant. Thus, Northwest-

*Interests, Inc.*, 211 Wis. 2d 224, 234, 564 N.W.2d 728, 733 (1997) (citing *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762 (Mass. 1992)).

174

ern's pollution exclusion clause does not preclude coverage and, therefore, the trial court erred in concluding that Northwestern had no duty to defend. Accordingly, we reverse.

*By the Court.*—Judgment reversed.

FINE, J. *(dissenting)*. The majority holds that the leaching of lead from lead-based paint into the air, whether in the form of chips, dust, or flakes, is not the "discharge, dispersal, release or escape of [a] pollutant[ ]" within the meaning of an insurance-policy exclusion that defines "pollutant" as, among other things, "any solid . . . irritant or contaminant, including . . . chemicals."[1] The majority bases this conclusion on the supreme court's determination that carbon dioxide, which is a normal component of air, would not reasonably be thought of as "in the same class" as other "pollutants" described by the policy, namely " 'smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste,' " even if that carbon dioxide was present in that air in sufficiently high concentrations to cause illness, *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 234, 564 N.W.2d 728, 733 (1997). Majority op. at 172–173, citing and relying on *Donaldson*. The crux of *Donaldson*, however, was "the inadequate ventilation of exhaled carbon dioxide"—that is, the failure of a *system* designed to remove carbon dioxide before it reached dangerous levels of concentration. *Id.*, 211 Wis. 2d at 226–227, 564 N.W.2d at 730. Unlike lead, carbon dioxide is a substance produced by most living things on this planet—people, animals, and, at night, plants.

---

[1] Lead, of course, is an elemental "chemical."

175

According to the majority, *Donaldson* "extensively relied on *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*," 976 F.2d 1037 (7th Cir. 1992) (pollution-exclusion clause in insurance contract applied to spillage of eighty gallons of oil laced with polychlorinated biphenyls), and its *dictum* discussion of " 'everyday activities gone slightly, but not surprisingly, awry.' " Majority op. at 172–173 (quoting *Pipefitters*, 976 F.2d at 1044). In support of its supposition that "[t]here is nothing that unusual about paint peeling off of a wall, asbestos particles escaping during the installation or removal of insulation, or paint drifting off the mark during a spraypainting job," *Pipefitters*, 976 F.2d at 1044, *Pipefitters* cites, with respect to the "paint peeling off the wall" comment specifically relied on by the majority, *see* majority op. at 172, *Atlantic Mut. Ins. Co. v. McFadden*, then a Massachusetts trial court decision that has since been affirmed, *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762 (Mass. 1992). *See Pipefitters*, 976 F.2d at 1043–1044. Significantly, *McFadden*, which was also cited by *Donaldson*, 211 Wis. 2d at 234, 564 N.W.2d at 733, limited the pollution-exclusion clause at issue both there and here to "*industrial pollution.*" *McFadden*, 595 N.E.2d at 764 (emphasis added). That, however, is not the law in Wisconsin; pollution-exclusion clauses in Wisconsin are not so limited. *See Donaldson v. Urban Land Interests, Inc.*, 205 Wis. 2d 404, 413–414, 556 N.W.2d 100, 103–104 (Ct. App. 1996), *rev'd on other grounds*, 211 Wis. 2d 224, 564 N.W.2d 728 (1997).

*McFadden* did not decide or even discuss the issue presented by either *Donaldson* or this appeal. Unless the supreme court is prepared to follow *McFadden*'s lead and specifically limit pollution-exclusion clauses to industrial-pollution cases, and thus overturn our

decision in *Donaldson* on that point as well, reliance on *McFadden* is without merit. Indeed, *Pipefitters* recognized that there is a split among jurisdictions in connection with the soundness of its *dictum* discussion, upon which the majority here relies, and deliberately declined to resolve that dispute for the Seventh Circuit. *See Pipefitters*, 976 F.2d at 1044.

In my view, *Donaldson*, *Pipefitters*, and *McFadden* are slim reeds upon which to hang a repudiation of our distinction between lead in paint that remains intact on the surfaces to which the paint was applied, and lead that escapes from those surfaces in the form of dust, chips or flakes, that we drew in *Vance v. Sukup*, 207 Wis. 2d 576, 582–583, 558 N.W.2d 683, 686 (Ct. App. 1996), *vacated and remanded to court of appeals without opinion*, 211 Wis. 2d 529, 568 N.W.2d 297 (1997). Certainly, neither the rationale nor the result in *Donaldson*, *Pipefitters*, or *McFadden* compels the decision the majority reaches. Indeed, the fact that "[t]here is nothing unusual about paint peeling off of a wall, asbestos particles escaping during the installation or removal of insulation, or paint drifting off the mark during a spraypainting job," *Pipefitters*, 976 F.2d at 1044, is the very reason why a reasonable insured reading the pollution-exclusion clause would *not* expect to have insurance coverage. Insurance (with the exception of "whole" life insurance, which has its own actuarial shields for the insurer) provides security against *unexpected* but possible events—not the everyday hazards of life that are likely to occur sooner or later. Indeed, the analysis here would be no different if the injuries were caused by fuel oil that leaked from a storage tank in the basement.

Unlike *Donaldson*, this case does not involve the failure of a mechanism to either regulate or flush a

byproduct of life before that substance reaches dangerous levels. Unlike *Donaldson*, this case involves lead chips, lead flakes, and lead dust that "contaminated" (any other word would be a mere synonym) Kevin Peace's environment because it was "discharge[d]" or "dispers[ed]" or "release[d]" (any other words would be mere synonyms) from a place where the lead, if left there, was harmless. In essence, in both *Pipefitters* (oil laced with polychlorinated biphenyls) and here (lead) the "contaminant" was perfectly safe until it was released into an environment different than the environment for which it was intended—a transformer in *Pipefitters*, 976 F.2d at 1038–1039, and painted surfaces here. *See United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 505, 476 N.W.2d 280, 283 (Ct. App. 1991) ("[I]t is a rare substance indeed that is *always* a pollutant; the most noxious of materials have their appropriate and non-polluting uses.") (emphasis in original). The only real difference between *Pipefitters* and this case is the distinction between industrial and non-industrial pollution, a distinction that the majority does not even discuss.

I would affirm.