Joel HIRSCHHORN and Evelyn F. Hirschhorn,
Plaintiffs-Appellants,

v.

AUTO-OWNERS INSURANCE COMPANY,
Defendant-Respondent.†

Court of Appeals

*No. 2009AP2768. Submitted on briefs September 29, 2010.
—Decided October 19, 2010.*

2010 WI App 154

(Also reported in 792 N.W.2d 639.)

† Petition for Review granted 3-16-11.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Joel Hirschhorn* of *Hirschhorn & Bieber, P.A.*, Coral Gables, Florida, and Rhinelander, Wisconsin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Douglas J. Klingberg* of *Ruder Ware, L.L.S.C.*, Wausau.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Joel and Evelyn Hirschhorn appeal a judgment dismissing their insurance coverage and bad faith claims against Auto-Owners Insurance Company. The Hirschhorns argue the circuit court misinterpreted their homeowner's insurance policy's pollution exclusion clause when it concluded the policy did not cover damage caused by bat guano. Because we conclude the pollution exclusion language is ambiguous in this regard, we construe it in favor of coverage, and reverse and remand.

## BACKGROUND

¶ 2. The Hirschhorns resided out of state but owned a vacation home in Oneida County. They listed the home for sale in May 2007, at which time they, along with a real estate broker, inspected the home and found

234

no signs of bats. In July, the broker noticed bat guano on the house, and inspecting further, discovered the presence of bats. The broker undertook to remove the bats and clean the premises, but when the Hirschhorns stayed at the home in August they noticed a "penetrating and offensive odor" in the home. The Hirschhorns subsequently obtained a remediation estimate from a contractor, but the contractor could not guarantee he could remove the odor.

¶ 3. The Hirschhorns filed a property loss notice with Auto-Owners on October 23, 2007. Auto-Owners denied the claim three days later, without conducting an investigation or inspecting the house. The denial letter stated the policy did not cover the accumulation of bat guano[1] because it was "not sudden and accidental" and resulted from faulty, inadequate, or defective maintenance. In a revised position letter dated February 22, 2008, Auto-Owners also cited the policy's pollution exclusion. By that time, the Hirschhorns had demolished the house and begun construction of a new home.

¶ 4. Eventually, the Hirschhorns sued Auto-Owners, asserting claims for breach of contract and bad faith. Auto-Owners moved for summary judgment, arguing the loss was not covered because it was not "accidental direct physical loss to covered property" and also because three exclusions applied: (1) faulty or inadequate maintenance, (2) vermin, and (3) pollution. The circuit court denied the motion in an oral ruling, concluding there was coverage.[2] The court observed, "[T]his isn't a pollution case . . . ." It continued:

---

[1] We assume the bats deposited both feces and urine in the home. Therefore, to be clear, when we refer to "guano," the term includes both.

[2] Auto-Owners does not cross-appeal and challenge the circuit court's conclusions that there was an initial grant of

235

> When we talk about pollution, it's usually a leakage or seeping from a polluted area into some other area causing damage. And we don't have that same situation here. We have the damage actually being caused by things coming into the structure ... which isn't the same as the traditional pollution cases.[264]

However, after Auto-Owners moved for reconsideration and revised its arguments, the court held that excrement fell into the category of "waste" and, therefore, was a pollutant under the exclusion. Because there was no coverage under the policy, the court also concluded there could be no bad faith claim and dismissed the Hirschhorns' case. The Hirschhorns now appeal, arguing the circuit court misinterpreted the pollution exclusion.

## DISCUSSION

¶ 5. The interpretation of an insurance policy presents a question of law that we decide independent of the circuit court. *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230, 564 N.W.2d 728 (1997). Our goal is to ascertain and carry out the intent of the parties. *Peace v. Northwestern Nat'l Ins. Co.*, 228 Wis. 2d 106, 120–21, 596 N.W.2d 429 (1999). "Policy language is interpreted according to its plain and ordinary meaning as understood by a reasonable insured." *Id.* at 121. We resolve any ambiguities in a policy in favor of coverage, and narrowly construe exclusion clauses against the insurer. *Donaldson*, 211 Wis. 2d at 230. "[W]ords or phrases in an insurance policy are ambiguous if, when read in context, they are susceptible to more than one reasonable interpretation." *Id.* at 231.

coverage or that the maintenance or vermin exclusions did not apply.

¶ 6. The Hirschhorns' policy excludes coverage for "loss resulting directly or indirectly from: ... discharge, release, escape, seepage, migration or dispersal of pollutants . . . ." The policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gasses and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

¶ 7. The same pollution exclusion clause was analyzed in both *Donaldson* and *Peace*. In *Donaldson*, 211 Wis. 2d at 231, 235, the supreme court found the clause ambiguous as it applied to exhaled carbon dioxide. However, in *Peace*, 228 Wis. 2d at 121–22, 130, the court found the clause unambiguous as it applied to lead paint particles. Whether the exclusion unambiguously applies to excreted bat guano as a "pollutant" is an unresolved question. As the court observed in *Peace*, "Language inevitably creates some ambiguity. . . . Whether the nuances and imprecision of general language equal ambiguity as a matter of law is a determination influenced by perception and perspective. A court must do its best to ascertain the objective expectations of the parties from the language in the policy." *Id.* at 134. That court also recited the following definitions relating to the policy definition of pollutant:

> A "contaminant" is defined as one that contaminates. *American Heritage Dictionary of the English Language* 406 (3d ed. 1992). "Contaminate" is defined as "1. To make impure or unclean by contact or mixture." *Id.* at 406.
>
> An "irritant" is defined as the source of irritation, especially physical irritation. *Id.* at 954. "Irritation" is

237

defined, in the sense of pathology, as "A condition of inflammation, soreness, or irritability of a bodily organ or part." *Id.* at 954.

*Peace*, 228 Wis. 2d at 122.

¶ 8. *Donaldson* was a "sick building" case in which an insurance company sought to exclude liability for the consequences of an inadequate air exchange system. *See Peace*, 228 Wis. 2d at 136. After the building defect caused an excessive accumulation of carbon dioxide in the work area, the insurer attempted to categorize exhaled carbon dioxide as a pollutant. A divided court of appeals concluded that the policy definition of "pollutant" unambiguously included exhaled carbon dioxide because it is a gaseous substance which, at higher concentrations, can become an irritant. *Donaldson,* 211 Wis. 2d at 231. Disagreeing, the supreme court observed:

> *The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for there is virtually no substance or chemical in existence that would not irritate or damage some person or property.* Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results.
>
> . . . .
>
> [I]nadequately ventilated carbon dioxide from human respiration would not ordinarily be characterized as a "pollutant." Exhaled carbon dioxide can achieve an injurious concentration in a poorly ventilated area, but it would not necessarily be understood by a reasonable insured to meet the policy definition of a "pollutant."
>
> The reach of the pollution exclusion clause must be circumscribed by reasonableness, lest the contractual promise of coverage be reduced to a dead letter.

*Id.* at 232–33 (emphasis added). The court continued:

238

It is also significant that, unlike the nonexhaustive list of pollutants contained in the pollution exclusion clause, exhaled carbon dioxide is universally present and generally harmless in all but the most unusual instances. In addition, the respiration process which produces exhaled carbon dioxide is a necessary and natural part of life. We are therefore hesitant to conclude that a reasonable insured would necessarily view exhaled carbon dioxide as in the same class as "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

*Id.* at 234.

¶ 9. In *Peace*, the court acknowledged that lead had many beneficial uses, including its intentional addition to paints. *Peace*, 228 Wis. 2d at 116, 123. However, in contrast to the italicized *Donaldson* language above, the court stated, "It is a rare substance indeed that is *always* a pollutant; the most noxious of materials have their appropriate and non-polluting uses." *Peace*, 228 Wis. 2d at 128 (quoting *United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 505, 476 N.W.2d 280 (Ct. App. 1991)). Ultimately, the court concluded lead paint satisfied the definition of pollutant, observing, "There is little doubt that lead derived from lead paint chips, flakes, or dust is an irritant or serious contaminant." *Id.* at 125. Contrasting the abundant and generally benign carbon dioxide in *Donaldson*, the court stated lead paint particles "are widely, if not universally, understood to be dangerous and capable of producing lead poisoning. The toxic effects of lead have been recognized for centuries." *Id.* at 137 (footnote omitted).

¶ 10. Here, we conclude excreted bat guano is akin to exhaled carbon dioxide, both biologically and as a reasonable insured homeowner would view it regarding the pollution exclusion. One could review the pol-

lution exclusion as a whole and reasonably interpret "pollutant" as not including bat guano excreted inside a house. Therefore, strictly construing the exclusion and resolving ambiguities in favor of coverage, we conclude the pollution exclusion does not eliminate coverage in this case.

¶ 11. The Hirschhorns argue that, reviewing the exclusion as a whole, a reasonable insured would not understand the accumulation of excreted bat guano in their home's attic and walls to constitute pollution excludable from coverage. Breaking down the policy language into its parts and reviewing the dictionary definitions of the various terms, Auto-Owners responds that the exclusion is unambiguous because: bat waste is "waste," the accumulated waste was both a "contaminant" and "irritant" because it gave off an odor so penetrating and offensive that the house had to be razed, and the waste was discharged or released into the home. Again, the policy defines "pollutant" as an:

> irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gasses and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

¶ 12. Essentially, the Hirschhorns invoke the *ejusdem generis* rule, which requires that words in a list be interpreted in light of the other listed terms.[3] The

---

[3] Ejusdem generis means:

Of the same kind, class, or nature.

[T]he "ejusdem generis rule" is, that where general words follow an enumeration of . . . things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned.

BLACK'S LAW DICTIONARY 608 (rev. 4th ed. 1968).

only exemplar in the definition of pollutant here that suggests inclusion of bat guano is "waste." Indeed, waste *can* mean excrement. But in the context it is presented here, when a person reading the definition arrives at the term "waste," poop does not pop into one's mind. Nor does it come to mind when one continues to the listed items that waste includes.

¶ 13. While *Donaldson* recognized the terms irritant and contaminant are extremely broad, waste is even more so. Review of any comprehensive dictionary reveals numerous definitions of waste, even when used, as here, as a noun. Eventually, everything is waste. Waste may also be intangible; for example, there may be wasted time, wasted energy, wasted opportunity, wasted money, and wasted words. Of course, the policy definition of waste is informed, and limited by, its context. Reviewing the various dictionary definitions in that context, the most likely interpretation of waste is: "damaged, defective, or superfluous material produced during or left over from a manufacturing process or industrial operation . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2580 (unabr. Merriam Webster 1993). Perhaps, the meaning might also include the more general definitions: "garbage, rubbish." *Id.*

¶ 14. However, waste, in its context here listed as an example of a pollutant, would not unavoidably be interpreted as excrement. Substituting the terms makes this evident: "smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gasses and [excrement]." As the saying goes, "one of these things is not like the others."[4]

---

[4] The popular phrase originated from the educational children's television show, Sesame Street: "One of these things is not like the others, One of these things just doesn't belong, Can you tell which thing is not like the others[,] By the time I finish my song?" *See* Metrolyrics, http://www.metrolyrics.com/one-of-these-things-is-not-like-the-others-lyrics-sesame-street.html.

¶ 15. The policy definitions of "pollutant" and "waste" are further informed by the policy's exclusionary clause itself, which omits coverage for the "discharge, release, escape, seepage, migration or dispersal of pollutants." None of those terms particularly suggest the movement of excrement. Rather, the bodily processes by which wastes such as carbon dioxide, urine, or feces move out of an organism would more commonly be described as respiration, elimination, excretion, or some other term suggesting a biological process. Thus, at best, the clause's action words do not suggest to the reader a biological process, and they may even suggest that biological processes are not part of the exclusion. Therefore, because a person might reasonably interpret the pollution exclusion as not contemplating bat guano, coverage is not excluded.[5]

*By the Court.*—Judgment reversed and cause remanded; costs limited.

---

[5] After briefing, the Hirschhorns filed "additional authority" consisting of "several articles and statutes" relating to bats and bat guano. Auto-Owners objected pursuant to WIS. STAT. RULE 809.19(11), disputing that the submissions were "pertinent authorities" under RULE 809.19(10). We agree. Further, the Hirschhorns' cover letter fails to set forth the requisite information. *See id.* Additionally, the Hirschhorns' appendix is needlessly lengthy, including nonessential parts of the record, such as complete trial briefs. *See* WIS. STAT. RULE 809.19(2)(a). Therefore, we strike the Hirschhorns' "additional authority" filing, and direct that the Hirschhorns shall not recover costs incurred for printing and assembling their appendix. *See* WIS. STAT. RULES 809.25(1)(a), 809.83(2).